HAGOPIAN *v.* CITY OF HIGHLAND PARK.

WORKMEN'S COMPENSATION—ORDINARY DISEASES OF LIFE—HEART
TROUBLE—OCCUPATIONAL DISEASES—ACCIDENT.

In proceeding under workmen's compensation act which declared ordinary diseases of life to which the public is generally exposed outside of the employment were not compensable, recovery is denied to 54-year-old man who became unable to continue work of emptying refuse cans, after having assisted in taking care of about 40 of them during morning, because of condition of heart, where no claim is made that plaintiff suffered an occupational disease, it is not shown there was a fortuitous event incident to his being stricken while in the course of his performance of the work, and the ensuing disability does not appear to have been due to causes and conditions characteristic of and peculiar to the business of the employer (Act No. 10, pt. 2, § 1, pt. 7, § 1, Pub. Acts 1912 [1st Ex. Sess.], as amended by Act No. 245, Pub. Acts 1943).

BUSHNELL, REID, and STARR, JJ., dissenting.

Appeal from Department of Labor and Industry. Submitted October 5, 1945. (Docket No. 47, Calendar No. 43,044.) Decided March 4, 1946. Rehearing denied May 13, 1946.

Sam Hagopian presented his claim against City of Highland Park for injuries sustained while in defendant's employ. Award to plaintiff. Defendant appeals. Reversed.

*S. Gerard Conklin,* for plaintiff.

*Benjamin Marcus,* for plaintiff on application for rehearing.

*Earl B. Young,* City Attorney, and *Gavin D. Smith,* for defendant.

*Amici curiae* on application for rehearing:

*Charfoos & Gussin,* for Michigan Federation of Labor, affiliated with the American Federation of Labor.

*Maurice Sugar,* General Counsel, and *Benjamin Marcus (Raymond H. Rapaport,* of counsel), for International Union, United Automobile, Aircraft and Agricultural Workers of America (UAW–CIO).

*Samuel Charfoos* and *James A. Markle,* for National Lawyers Guild, Detroit Chapter.

*Walter M. Nelson,* for Foreman's Association of America, Michigan Federation of Teachers, Michigan Farmers' Union.

*Buell A. Doelle.*

BUSHNELL, J. (*dissenting*). Plaintiff Sam Hagopian was employed by defendant city of Highland Park in its public works department. On January 27, 1944, he was one of a crew working with a truck picking up refuse from cans placed on street corners. The cans were heavy and were being handled by two men. On the day in question Hagopian and his partner had emptied about 40 of them from the time they began work at 7 o'clock in the morning. At about 11 o'clock in the morning, while

lifting a can to the truck, Hagopian said he could not lift any more and went around the corner to a public comfort station. On his return he stated that he could not stand on his feet any more. He was put in the truck and taken to the city physician, who sent him to the hospital.

The hospital records show that upon admission Hagopian had a blood pressure of 128 over 75, with a heart rate and rhythm normal, but a systolic murmur was heard over the mitral area and left sternal border. The tentative impression of the physician who examined him on admission was the possibility of bronchial asthma, or perhaps a cardiac decompensation with possibility of coronary difficulty. An X-ray taken later showed a definite heart enlargement, suggestive of an aortic lesion. Hagopian was suffering severe pain and headaches when admitted to the hospital.

The city physician testified that when he first saw Hagopian, he was panting for breath and had an anxious expression on his face, which indicated an attack of asthma. This doctor claimed that, when questioned as to this, Hagopian admitted a similar attack the day before while sitting in a restaurant. This, however, was denied by Hagopian when cross-examined. Dr. Charles H. Clifford, who testified in plaintiff's behalf, examined Hagopian on September 23, 1944, about nine months after the incident. His examination disclosed an enlarged heart with a blood pressure of 130 over 80, and a regular pulse rate of 76. He stated that such a condition could have resulted from a strain, and that Hagopian was disabled to the extent that he could not perform heavy labor. He did not find any asthma present at

the time of his examination, but found that Hagopian's heart was abnormal for a man of his age.*

Dr. Langdon T. Crane made an examination of Hagopian several days prior to that made by Dr. Clifford and he testified in behalf of the defendant. He found a blood pressure of 138 over 80 and some evidence of arteriosclerosis, but a normal heart, except for a soft distant systolic murmur at the apex. He did not agree that the heart was enlarged or that it was in a diseased condition. He concurred, however, in the view that Hagopian could do only light work, and was of the opinion that there was no causal connection between the lifting of cans on January 27, 1944, and the left axis deviation shown in an electrocardiogram made in September of that year. On cross-examination he agreed that a strain connected with any kind of heavy lifting could cause damage to a diseased heart, and that, generally, cardiac asthma is associated with acute cardiac failure.

Hagopian's claim for compensation resulted in an award by the deputy of $21 per week for total disability from January 27, 1944, to September 26, 1944, and compensation for disability thereafter, together with an allowance for medical and hospital expenses incurred. This award was reviewed by the department on the basis that plaintiff's injury was "not compensable because it was not accidental." The question presented may also be stated in this manner: Does the workmen's compensation law (2 Comp. Laws 1929, § 8407 *et seq.* [Stat. Ann. § 17.141 *et seq.*]) as now amended by Act No. 245, Pub. Acts

---

* Plaintiff testified at the hearing before the deputy commissioner that he was 54 years of age.—REPORTER.

1943,† permit compensation under the facts stated?

The department held that the 1943 amendment obviated the necessity of proof of an accident in that the term "injury" was substituted for the terms "accident" and "accidental injury." The argument presented by the defendant city that the term "injury" does not permit the award of compensation for disability by reason of a personal injury due to a single event, unless confined to either an accidental injury or an occupational injury, was answered by the department, after quoting the amendment, as follows:

"If it was intended to compensate for personal injury due to a single event only if such event was an accidental occurrence, then the word 'accident' would undoubtedly have been used in section 1 rather than the term 'single event'."

It was suggested to the department that the term "injury" could not be construed to include a happening like that in the instant case because when the legislature amended the act no change was made in its title, which still reads:

"An act to promote the welfare of the people of this State, relating to the liability of employers for injuries or death sustained by their employees, providing compensation for the disability or death resulting from occupational injuries or disease or accidental injury to or death of employees and methods for the payment, and apportionment of the same, establishing an industrial accident board, defining its powers, providing for a review of its awards, making an appropriation to carry out the provisions of this act, and restricting the right to

† See Comp. Laws Supp. 1945, § 8408 et seq., Stat. Ann. 1945 Cum. Supp. § 17.142 et seq.—REPORTER.

compensation or damages in such cases to such as are provided by this act."

The department quite properly did not pass upon the constitutional question suggested, but that question is squarely presented here in the appeal. Plaintiff points out in his argument, as did the department in its opinion, that a comparison of the workmen's compensation act, as now amended, with the act in force prior to July 30, 1943, the effective date of the 1943 act, discloses that the words "accident" and "accidental" were used 54 times in the act before its amendment and now both words are used only five times. He argues that the conclusion is inescapable that the legislature's failure to completely eliminate the use of these words not only in the body of the act but in its title was due entirely to inadvertence.

We think the reasoning in the well-known cases of *People, ex rel. Drake,* v. *Mahaney,* 13 Mich. 481, 494, and *Mackin* v. *Detroit Timkin Axle Co.,* 187 Mich. 8, 20, are sufficient answer to the constitutional argument with respect to the title of the act. These authorities are so well known to the profession that their language need not be here repeated. It is obvious to even the ordinary lay reader that the scope of the title of the act in question is sufficient to embrace the provisions of the 1943 amendment, and that this amendment in connection with the title does not offend or contravene the mandate of article 5, § 21, of the 1908 Constitution of this State, which provides in part that: "No law shall embrace more than one object which shall be expressed in its title."

There remains, therefore, for determination only the intent of the legislature when it substituted the

term "personal injury" for the former language, "accidental injury" or "occupational injury or disease." It should be borne in mind that the title to the compensation act (Act No. 10, Pub. Acts 1912 [1st Ex. Sess.] [2 Comp. Laws 1929, § 8407 *et seq.* (Stat. Ann. § 17.141 *et seq.*)]) was amended in 1937 by Act No. 61, to read:

"An act to promote the welfare of the people of this State, relating to the liability of employers for injuries or death sustained by their employees, providing compensation for the disability or death resulting from occupational injuries or disease, or accidental injury to or death of employees, and methods for the payment and apportionment of the same, establishing an industrial accident board, defining its powers, providing for a review of its awards, making an appropriation to carry out the provisions of this act, and restricting the right to compensation or damages in such cases to such as are provided by this act."

At the same time there was added to the act part 7 (Comp. Laws Supp. 1940, § 8485–1 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 17.220 *et seq.*), which provided compensation for disability or death due to occupational injury or disease, and in the part mentioned a schedule of such diseases was set up. In 1943, by the act now in question, the schedule of occupational diseases was amended and part 7, § 2 (Comp. Laws Supp. 1945, § 8485–2, Stat. Ann. 1945 Cum. Supp. § 17.221), was enacted as follows:

"The disablement of an employee resulting from such disease or disability shall be treated as the happening of a personal injury within the meaning of this act and the procedure and practice provided in this act shall apply to all proceedings under this

part, except where specifically otherwise provided herein."

Section 1, subd. (c) of the same part (Comp. Laws Supp. 1945, § 8485–1 [c], Stat. Ann. 1945 Cum. Supp. § 17.220 [c]) was also amended to read:

"The term 'personal injury' shall include a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment. Ordinary diseases of life to which the public is generally exposed outside of the employment shall not be compensable, provided, however, that a hernia to be compensable must be clearly recent in origin and result from a strain arising out of and in the course of the employment and promptly reported to the employer."

Defendant insists that we should apply the reasoning of *Adams* v. *Acme White Lead & Color Works*, 182 Mich. 157 (L. R. A. 1916 A, 283, 6 N. C. C. A. 482, Ann. Cas. 1916 D, 689), in determining the question presented. In that case we held that consideration of the term "personal injury" in the light of the then title of the act required the conclusion that personal injuries were limited to accidental injuries as distinguished from occupational diseases. However, since that decision the legislature has provided for compensation for certain occupational diseases and has subsequently broadened the act by covering personal injuries arising out of and in the course of the employment.

It is elementary that statutory language is to be considered in its ordinary meaning. In a case involving facts similar to those presented here and under a statute containing a provision for compen-

sation for "'personal injury arising out of and in the course of" the employment,* the Massachusetts court said:

"While the consequences to which a particular construction or application of a statute would lead have an important bearing in determining what may have been the intent of the legislature in using words of doubtful import (*Greene* v. *Greene,* 2 Gray (68 Mass.), 361, 364 [61 Am: Dec. 454]), they cannot control a plain rule of positive law established by clear language in a legislative mandate. The words 'personal injury' had meaning in the law before the passage of the workmen's compensation act sufficiently well defined clearly to include the kind of personal harm here disclosed, so that it hardly can be assumed, under all the circumstances, that the legislature used them in a different or unusually constricted sense.

"There are no conditions which warrant a judicial interpretation of the words 'personal injury' in the act as meaning the same as 'personal injury by accident,' or as excluding from the scope of 'personal injuries' those instances where a diseased physical condition may have invited, or rendered the employee unusually susceptible to 'personal injury.' It may be that the legislature intended a more narrow field than actually was described by the words used. But if that be so, the remedy must be sought from the legislature. There are no means by which the court can ascertain 'the purpose and effect of a statute except from the words used when given their common and approved meaning.' *In re Bergeron,* 220 Mass. 472, 475 (107 N. E. 1007, Ann. Cas. 1917 A, 549)." *Madden's Case,* 222 Mass. 487 (111 N. E. 379, L. R. A. 1916 D, 1000, 1005).

---

* See 2 Comp. Laws 1929, § 8417, as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8417, Stat. Ann. 1945 Cum. Supp. § 17.151).—REPORTER.

No particular reasoning is required to elucidate when an injury is personal. The question finally presented is: Did Hagopian suffer an injury? Even though Hagopian may have suffered from a diseased heart condition, nevertheless the facts clearly show that he worked from 7 o'clock in the morning until about 11 a. m. without experiencing any difficulty, and had lifted, with the aid of another man, a considerable number of heavy containers, and then, while lifting, experienced pain and required medical attention and assistance. It cannot be successfully argued, in the light of the testimony presented, that he now can do the same work which he formerly did. As stated in *Marman* v. *Detroit Edison Co.*, 268 Mich. 166, 167:

"Personal injury implies something more than changes in the human system incident to the general process of nature or existing disease 'or weakened physical condition. The term, as employed in the compensation act, contemplates some intervention which either produces a direct injury or so operates upon an existing physical condition as to cause an injurious result, reasonably traceable thereto."

See, also, *Twork* v. *Munising Paper Co.*, 275 Mich. 174, and *Almquist* v. *Shenandoah Nurseries, Inc.*, 218 Iowa, 724 (254 N. W. 35, 94 A. L. R. 573), and annotation of authorities in 94 A. L. R. 584 *et seq.*

Testimony, to satisfy this legal requirement, was presented to the department and the department "may draw reasonable inferences from established facts and circumstances," although it "may not indulge in the assumption of a possibility based on a possibility and a consequent guess." *Marman* v. *Detroit Edison Co.*, 268 Mich. 166, 169.

The award should be affirmed, with costs to appellee.

REID and STARR, JJ., concurred with BUSHNELL, J.

BUTZEL, C. J. The award of the department should be set aside. Mr. Justice BUSHNELL in writing for affirmance states the main question as follows:

"Does the workmen's compensation law* as now amended by Act No. 245, Pub. Acts 1943, permit compensation under the facts stated?"

The opinion of the department does not detail all of the facts, nor do we know how much of the testimony unfavorable to plaintiff was believed. The cans, containing waste paper and street rubbish, were lifted by plaintiff and another man to a third man on the truck. Besides the third man on the truck, there was a driver. There was nothing unusual about the weight of the cans and this work was done regularly by defendant's employees. The department did find that "plaintiff previously had a diseased heart and the strain of lifting the can caused an injury to such heart and brought about the acute heart ailment which caused the disability." The department either did not believe or disregarded the testimony on the part of plaintiff indicating that there was a fortuitous event incident to his being stricken. We are thus presented with a case where a man who had an ordinary disease of life to which the public in general is exposed, while performing his duties, suddenly finds himself in a worse condition. There is no testimony that plaintiff was doing anything un-

* 2 Comp. Laws 1929, § 8407 et seq. (Stat. Ann. § 17.141 et seq.).—
REPORTER.

usual or out of the regular course of his employment, nor did the department find the existence of any trauma or fortuitous event. It needs no expert testimony to show that many diseases with which many are afflicted are progressive in nature and frequently become much more severe. This is particularly true of heart disease, and one suffering from it should not do any lifting or heavy work. Plaintiff does not claim that he suffered from an occupational disease, nor is there any testimony to support such a claim. We have frequently held that under the compensation act, prior to the adoption of the occupational disease amendment, one performing the ordinary work for which he is hired cannot recover unless there is an accident or a fortuitous event causing the disability. It was for this reason that there was a special provision made in regard to hernia in the occupational disease amendment to the act. In the event of such injury the law provided that the hernia must have been recent in its origin. Act No. 10, pt. 7, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937.*

In *Clifton* v. *Chrysler Corp.,* 287 Mich. 87, we stated:

"In this State the law is settled that if the injury of which plaintiff complains was occasioned merely by his lifting something heavy in the regular course of his employment, there was no accident and plaintiff is not entitled to an award of compensation. *Williams* v. *National Cash Register Co.,* 272 Mich. 553; *Waites* v. *Briggs Manfg. Co.,* 280 Mich. 185; *Nagy* v. *Continental Die Casting Corp.,* 283 Mich. 162."

---

* See Comp. Laws Supp. 1940, § 8485-1 *et seq.,* Stat. Ann. 1942 Cum. Supp. § 17.220 *et seq.*—REPORTER.

After the occupational disease amendment was adopted by the addition of part 7 by Act No. 61, Pub. Acts 1937, and its subsequent amendments (Comp. Laws Supp. 1940, 1945, § 8481–1 *et seq.,* Stat. Ann. 1945 Cum. Supp. § 17.220), the law was left with a rather illogical sequence and reference had to be made to the previous part of the act in order to establish procedure, amounts of compensation, et cetera. The act at all times had to be construed as a whole and parts coordinated together. *Podkastelnea* v. *Railroad Co.,* 198 Mich. 321. As a result, when Act No. 245, Pub. Acts 1943, was passed, an effort was made to simplify the act and coordinate its parts. The use of the word "injury" could cover not only accident but also occupational diseases. While there was considerable debate as to what the act should cover or not, in the last analysis we must look to the act itself and are bound by its language. The act must be strictly construed. *Sutter* v. *Kalamazoo Stove & Furnace Co.,* 297 Mich. 226. The measure of relief under the act may not be extended beyond its precise terms. *Tews* v. *C. F. Hanks Coal Co.,* 267 Mich. 466.

The title to the act was changed when the occupational disease amendment was adopted. In the amendment by Act No. 245, Pub. Acts 1943, relied upon by plaintiff, no change of title was made, nor do we believe that it was necessary. The title remained as it was and only provided for compensation for the disability or death resulting from occupational injuries or diseases or accidental injuries to employees. There was nothing whatsoever in the title to the act to indicate that the aggravation of a pre-existing sickness or disease without any accidental or fortuitous event was covered. In *Adams*

v. *Acme White Lead & Color Works,* 182 Mich. 157 (L. R. A. 1916 A, 283, 6 N. C. C. A. 482, Ann. Cas. 1916 D, 689), where recovery was sought for the occupational disease, there was no provision in the law in regard to occupational disease but it was sought to read such a provision into the law. We held:

"If it were to be held that the act was intended to apply to such diseases, it would, in so far as it does so, be unconstitutional and in violation of section 21 of article 5 of the Constitution of this State, which provides that:

" 'No law shall embrace more than one object, which shall be expressed in its title.'

"That the act, if it were held to apply to and cover occupational diseases, is unconstitutional in so far as it does so is shown by the fact that the body of the act would then have greater breadth than is indicated in the title. A careful analysis of the title of the act shows that the controlling words are 'providing compensation for accidental injury to or death of employees.' No compensation is contemplated except for such injuries. The prefatory words are generally dependent upon the above-quoted clause. The only compensation provided is for 'accidental injury to or death of employees,' and the last clause of the title restricts the right to compensation or damages in such cases 'to such as are provided by this act.' "

The same reasoning applies to an act which it is claimed gives recovery for injuries not caused by accident or occupational disease. The title does not cover it.

The amended act itself was not intended to cover aggravation of pre-existing disease without an accident or fortuitous event. It is true that, in word-

ing the act, the words "accident" or "accidental" as they existed in the prior acts and amendments frequently were omitted, but the words still remained both in the title and in the body of the act itself. It will be found that in part 3 of the act the board is still known as "the industrial accident board" with a seal described by the words "Industrial Accident Board—Michigan—Seal."* This is important but not at all decisive. However, under part 3, § 17, of the act, as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8456, Stat. Ann. 1945 Cum. Supp. § 17.191), the employer is obligated to keep a record of the "time and cause of the accident, the nature and extent of the injury and disability," et cetera. In part 4, § 1, as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8460, Stat. Ann. 1945 Cum. Supp. § 17.195), the contract or policy of insurance must agree to make payment "on account of all accidents" and provide for the furnishing of medical, surgical and hospital services if needed on account of all "accidents" happening to the employees. 2 Comp. Laws 1929, § 8465 (Stat. Ann. § 17.200), provides for an "accident fund." Section 15 of part 2, as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8431, Stat. Ann. 1945 Cum. Supp. § 17.165), provides for the obligation and liability of employer if he "has notice or knowledge of the happening of said 'accident' within three months after the happening of the same." We believe that the rewording of the act was for the purpose of making all of its provisions more homogeneous so as to cover injuries from occupational disease as well as accidents.

---

*2 Comp. Laws 1929, §§ 8440, 8441 (Stat. Ann. §§ 17.174, 17.175).—Reporter.

The wording of part 7, § 1, of the act as amended by Act No. 245, Pub. Acts 1943, provides for "Definition. Whenever used in this act." It states in paragraph (c) of section 1 (Comp. Laws Supp. 1945, § 8485–1, Stat. Ann. 1945 Cum. Supp. § 17.220):

"The term 'personal injury' shall include a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment. Ordinary diseases of life to which the public is generally exposed outside of the employment shall not be compensable."

Section 2 of part 7, as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8485–2, Stat. Ann. 1945 Cum. Supp. § 17.221), further provides:

"The disablement of an employee resulting from such disease or disability shall be treated as the happening of a personal injury within the meaning of this act and the procedure and practice provided in this act shall apply to all proceedings under this part, except where specifically otherwise provided herein."

The words "personal injury," as used in part 2, § 1, previously defined by our court, were broadened in meaning by the occupational disease amendment. The precise time of such disability in case of an occupational disease could not be as definitely ascertained as in the case of a single accident. We do not believe that the substitution of the word or redefinition of the time of injury for the purpose of determining compensatory rights so as to harmonize part 7 with the procedural part of the act created

any new substantive rights. The words "personal injury," as used in part 2, § 1, as previously defined by our court in *Adams* v. *Acme White Lead & Color Works, supra,* were broadened in meaning by the occupational disease amendment which, however, referred to the other sections of the act so that the word "accident" was continued in use as synonymous and interchangeable with "occupational disease." By the amendment of 1943, the words "personal injury" were substituted in certain places for the word "accident." In the amendment of the law by Act No. 245, Pub. Acts 1943, the following was added to part 2, § 1:

"The term 'time of injury' or 'date of injury' as used in this act shall in the case of a disease or in case of an injury not attributable to a single event be the last day of work in the employment in which the employee was last subjected to the conditions resulting in disability or death." *

This would include such situations where repeated accidents might occur to a person who continued to work until final disablement, or where there might have been numerous exposures to conditions bringing about an occupational disease. Inasmuch as timely notice had to be given, the law wisely provided the foregoing quoted clause, the need for which was shown in the *Adams Case, supra.* The court there pointed out the difficulty of determining the time of injury had the old act included occupational disease. Although the occupational disease amendment was passed in 1937, it was not until 1943 that the legislature attacked the problem of determining the time of injury referred to in the *Adams*

---

* See Comp. Laws Supp. 1945, § 8417, Stat. Ann. 1945 Cum. Supp. § 17.151).—REPORTER.

*Case, supra,* and stated that in the case of occupational diseases, "an injury not attributable to a single event," the term "time of injury" or "date of injury" as used throughout the act shall be "the last day of work in the employment in which the employee was last subjected to the conditions resulting in disability or death." (Part 2, § 1, as amended by Act No. 245, Pub. Acts 1943.)

Section 1, part 2, both before and after the amendment of 1943, provided for compensation for a "personal injury" arising out of and in the course of employment. We have always recognized the humanitarian purposes of the compensation act and have had no hesitancy in applying it in cases where one suffering from a previous disease mild in form, not arising out of the employment within the meaning of the occupational disease amendment, later met severe disability through accident or fortuitous circumstances. *LaVeck* v. *Parke, Davis & Co.,* 190 Mich. 604 (L. R. A. 1916 D, 1277); *Schroetke* v. *Jackson-Church Co.,* 193 Mich. 616 (L. R. A 1917 D, 64); *Monk* v. *Charcoal Iron Co.,* 246 Mich. 193. We have never applied it nor does the language warrant its application to cases where there has been no accident or fortuitous circumstance aggravating a preexisting disease which was not occupational in character within the meaning of the amendment. To do so might result in far-reaching consequences not intended by the legislature. The act was never intended to be either sickness or health insurance, or to provide a pension for employees suffering from the ordinary diseases of life. It properly was restricted to accidents and occupational diseases. The fact that the legislature thus limited it is shown in section 1, part 7, wherein, as hereinbefore stated,

it was provided that "ordinary diseases of life to which the public is generally exposed outside of the employment shall not be compensable." Part 7 must be read in connection with the balance of the act, otherwise many of its provisions become meaningless. *Rueter* v. *Rinshed Mason Co.*, 303 Mich. 550.

There is absolutely no showing or claim here that the disability is one arising out of the particular type of work or resulting from the nature of the work performed. *Bederin* v. *Ex-Cell-O Corp.*, 311 Mich. 334, is very much in point. We unanimously affirmed the department's statement:

"In our opinion, the arthritis which was the cause of plaintiff's total disability at the time she quit work is not a disease due to 'causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment.' We do not think the conditions of her employment subjected her to a greater hazard than that which exists in the usual run of employment; nor do we think that arthritis is a disease which could be found to be a natural incident of the particular occupation in which she was engaged."

The phrase "causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment," is contained in the statute (part 7, § 1, subd. [c], of the compensation act, as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 245, Pub. Acts 1943), and here compels the denial of recovery under the occupational disease section of the act. As previously indicated, plaintiff cannot recover under part 2 of the act.

*Clifton* v. *Chrysler Corp., supra,* and cases there cited.

We can get but little aid from cases outside of Michigan. There are copious notes to the case of *McCormick Lumber Co.* v. *Department of Labor & Industries,* 7 Wash. (2d) 40 (108 Pac. [2d] 807), in 9 N. C. C. A. (N. S.) 335, which would indicate that the majority of States would refuse compensation under somewhat similar circumstances. In addition, it must be further considered that under the law of this State there must be an accident or fortuitous circumstance or else an occupational disease so as to entitle one to compensation. The opinion of the Massachusetts court, which court has admitted it "has gone further than most courts in allowing recovery in cases of heart lesions, where there has been a weak heart before the injury was received" (*Burn's Case,* 266 Mass. 516 [165 N. E. 670], in *Madden's Case,* 222 Mass. 487, 495 [111 N. E. 379; L. R. A. 1916 D, 1000]), although reaching a different conclusion based upon previous decisions on grounds specifically rejected by the Michigan court in *Adams* v. *Acme White Lead & Color Works, supra,* stated certain principles which, however, are pertinent:

"The act is not a substitute for disability or old age pensions. It cannot be strained to include that kind of relief. Its ultimate purpose merely is to treat the cost of personal injuries incidental to the employment as a part of the cost of the business. It does not afford compensation for injuries or misfortunes, which merely are contemporaneous or co-incident with the employment, or collateral to it. Not every diseased person suffering a misfortune while at work for a subscriber is entitled to compen-

sation. The relief is so new that the tendency may be to inquire only as to the employment and the injury and to assume that these two factors constitute ground for compensation. But the essential connecting link of direct causal connection between the personal injury and the employment must be established before the act becomes operative. The personal injury must be the result of the employment and flow from it as the inducing proximate cause. The rational mind must be able to trace the resultant personal injury to a proximate cause set in motion by the employment and not by some other agency, or there can be no recovery. In passing upon this question, an humanitarian emotion ought not to take the place of sound judgment in the weighing of evidence. The direct connection between the personal injury as a result and the employment as its proximate cause must be proved by facts before the right to compensation springs into being. A high degree of discrimination must be exercised to determine whether the real cause of an injury is disease or the hazard of the employment. A disease which under any rational work is likely to progress so as finally to disable the employee, does not become a 'personal injury' under the act merely because it reaches the point of disablement while work for a subscriber is being pursued. It is only when there is a direct causal connection between the exertion of the employment and the injury that an award of compensation can be made. The substantial question is whether the diseased condition was the cause, or whether the employment was a proximate contributing cause. In the former case, no award can be made; in the latter, it ought to be made.''

Our court has adhered to principles similar to the above and heretofore has not disagreed upon their

application.    Our opinions in *LaVeck* v. *Parke, Davis & Co., supra; Schroetke* v. *Jackson-Church Co., supra; Monk* v. *Charcoal Iron Co., supra,* and *Bederin* v. *Ex-Cell-O Corp., supra,* were all unanimous.    In the first three cases compensation was awarded because a fortuitous event occurred with the aggravation of a pre-existing disease, but in the *Bederin Case,* decided May, 1945, recovery was denied in accordance with Act No. 245, Pub. Acts 1943, which added the following phrase to the workmen's compensation law for the first time:

"Ordinary diseases of life to which the public is generally exposed outside of the employment shall not be compensable."

The inclusion by the legislature of these words for the first time cannot be said to be meaningless. True, it is a reaffirmation of the interpretation of this act previously given by this court, but with the inclusion of this phrase in the 1943 amendment, it can hardly be said that the 1943 amendment broadens the act so as to allow an award based on the facts as found by the department.

The award is set aside, with costs to defendant.

CARR, SHARPE, and BOYLES, JJ., concurred with BUTZEL, C. J.

NORTH, J., concurred in the result.