GACIOCH v THE STROH BREWERY COMPANY

Docket No. 75002. Argued January 15, 1986 (Calendar No. 13). Decided November 25, 1986.

Casimer A. Gacioch sought workers' compensation benefits, alleging disability because of chronic alcoholism which he contended arose out of and in the course of his employment with the Stroh Brewery Company because Stroh made free beer available to all employees during breaks as a result of a collectively bargained contract provision negotiated by the union. A hearing referee denied benefits, finding that the plaintiff's chronic alcoholism was not caused, aggravated, or accelerated by conditions characteristic of and peculiar to the business of the defendant. The Workers' Compensation Appeal Board reversed and ordered the defendant to pay compensation. While the appeal before the board was pending, the plaintiff died and Wanda Gacioch, his widow, was substituted as plaintiff. The Court of Appeals, T. M. BURNS and KAUFMAN, JJ. (J. H. GILLIS, P.J., dissenting), affirmed in an unpublished opinion per curiam (Docket No. 73810). The defendant and its workers' compensation insurer appeal.

The Supreme Court reversed the decision of the Court of Appeals and remanded the case to the Workers' Compensation Appeal Board for further findings of fact.

Justice ARCHER, joined by Chief Justice WILLIAMS, stated that on the basis of the record it is not possible to discern whether the board applied the appropriate legal standard and found as fact that the plaintiff's chronic alcoholism was not an ordinary disease of life to which brewery workers are no more prone than the general public, requiring reversal and remand to the board for further findings of fact.

Justices LEVIN and CAVANAGH concurred in the result only.

Justice BOYLE, joined by Justice RILEY, concurring, stated that because it has not convincingly been shown under statutory or case law controlling on the plaintiff's last day of employment with the defendant that alcoholism or a predisposition to alcoholism, whether or not aggravated or accelerated by conditions of employment, was contemplated as a compensa-

ble injury, the decision of the Court of Appeals should be reversed and the award of the WCAB vacated.

Reversed and remanded.

Justice BRICKLEY, dissenting, stated that the general rule allowing for compensation where a preexisting disease is aggravated by a job should not prevail where the aggravating condition is not required by the job and the disease is one from which recovery primarily depends upon personal motivation.

*Miller, Cohen, Martens & Ice, P.C.* (by *Norton J. Cohen, Paul A. Geary,* and *Peter A. Caplan*), for the plaintiff.

*Charfoos & Krut, P.C.* (by *Myron B. Charfoos*), for the defendants.

ARCHER, J. This case involves a claim for workers' compensation benefits for the chronic alcoholism suffered by plaintiff. We must determine whether, under the circumstances extant in this case, chronic alcoholism suffered by plaintiff who, during breaks drank beer provided free by Stroh Brewery pursuant to a collectively bargained contract provision negotiated by the union is compensable under the Workers' Disability Compensation Act[1] as a personal injury which arose out of and in the course of plaintiff's employment. This is a matter of first impression in the courts of this state.[2]

[1] MCL 418.301; MSA 17.237(301), which has been amended several times since the last day of plaintiff's work.

[2] We note that only one other case involving a workers' compensation claim for chronic alcoholism has ever been filed with the WCAB. In that case, the WCAB concluded that the record did not support the "notion that . . . alcoholism which occurs in all walks of life is more prevalent in the brewery industry than in any other occupation . . . ." The board declined to find that alcoholism is an occupational disease for purposes of Chapter 4. The board denied the plaintiff's workers' compensation claim, finding that the plaintiff had failed to sustain his burden of proof by a preponderance of the evidence. The plaintiff did not appeal the WCAB decision. See *Kuttney v Stroh Brewery,* unpublished opinion of the Workers' Compensation Appeal Board, No. 815, decided November 15, 1982.

On the basis of the record before us, we are unable to discern from the opinion of the WCAB whether it applied the appropriate legal standard and found as fact that plaintiff's chronic alcoholism was not an ordinary disease of life to which brewery workers are no more prone than the general public. Therefore, we reverse the decision of the Court of Appeals and remand this case to the board for further findings of fact. We retain no jurisdiction.

I

FACTS

Plaintiff Casimer Gacioch[3] began working for Stroh Brewery on February 24, 1947. At this time, Mr. Gacioch was predisposed to alcoholism, however, he had not become an uncontrolled alcoholic. Beer was provided free and was available to all employees on the job at "designated relief areas" at the Stroh Brewery plant. The beer was made available through a collectively bargained contract provision negotiated by the union. Employees could drink the beer during their breaks and lunch periods. There was no limit on how much beer an employee could drink during these breaks. Mr. Gacioch testified that at the time he was hired he drank three to four bottles of beer on the weekends. He did not drink alcohol during the week. Over the years of his employment at Stroh Brewery, Gacioch drank free beer during his breaks and at lunch until his consumption increased to nine to twelve bottles a day. Gacioch was not required to drink the beer. He was not, for example, a taster. Gacioch worked in production.

_____

[3] Mr. Gacioch died on June 25, 1982, and his wife was substituted as party plaintiff under the WCAB's order dated November 10, 1982.

He was responsible for running a machine, feeding cases of beer to a "soaker" at a set speed.

Stroh Brewery became aware of Gacioch's drinking problem, and in 1973 plaintiff entered a written agreement with the company and the union which stated that he was no longer allowed to drink on the job. Gacioch breached the agreement and signed a second agreement some seven months later. Notwithstanding the written agreement, he continued to drink on the job and gradually became unable to perform his work. Gacioch was fired on August 30, 1974, because he was intoxicated on the job. Dr. Smith, one of plaintiff's experts, testified that at the time Mr. Gacioch was terminated he was drinking more off than on the job.

From April, 1976, until September, 1978, Mr. Gacioch worked part-time as a custodian for a parish church. He continued to drink while working at the church. During the time he was employed at the church, he was pursuing a workers' compensation claim against Stroh Brewery. On August 18, 1977, he filed a petition for hearing which alleged that he was disabled because of alcoholism.[4] Deposition testimony of three experts was received into evidence. Dr. Smith testified that the "[a]vailability of alcoholic beverages at work were [sic] not causative in Mr. Gacioch's disease but did shape its course." Dr. Tanay testified that the free availability of alcohol during working hours was a significant contributing factor to the development of Mr. Gacioch's alcoholism. Notwithstanding this testimony, the hearing referee found that "although free alcoholic beverages were provided by the defendant as a fringe benefit pursuant to a union contract, the plaintiff abused this

---

[4] Plaintiff's petition did not allege a Chapter 3 personal injury.

privilege on his own volition and said abuse was not condoned or tolerated by the employer." The hearing referee denied benefits, concluding that "the plaintiff's illness (chronic alcoholism) was not caused, aggravated or accelerated by conditions characteristic and peculiar to the business of the defendant-employer."

Plaintiff appealed to the Workers' Compensation Appeal Board. While that appeal was pending, Mr. Gacioch died, and his widow, Wanda Gacioch, was appointed personal representative and was substituted as party plaintiff. In a comprehensive twenty-three page opinion, the appeal board reversed the decision of the hearing referee. The appeal board found that alcoholism is a disease, and, therefore, plaintiff did not abuse the free-beer policy on his own volition. The board also found that the free-beer policy accelerated plaintiff's alcoholism. The board concluded that plaintiff was disabled due to alcoholism and ordered defendant to pay plaintiff compensation benefits. Defendant appealed to the Court of Appeals, and the award of compensation benefits was affirmed two to one in an unpublished per curiam opinion.

II

The statute in effect on the last day of plaintiff's employment at Stroh Brewery read:

> An employee, who receives a personal injury arising out of and in the course of his employment by an employer who is subject to the provisions of this act, at the time of such injury, shall be paid compensation in the manner and to the extent provided in this act, or in case of his death resulting from such injuries the compensation shall be paid to his dependents as defined in this act. Time of injury or date of injury as used in this act in

the case of a disease or in the case of an injury not attributable to a single event shall be the last day of work in the employment in which the employee was last subjected to the conditions resulting in disability or death. [1969 PA 317, MSA 418.301(1); MSA 17.237(301)(1).]

"Personal injury" shall include *a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment. Ordinary diseases of life to which the public is generally exposed outside of the employment shall not be compensable.* A hernia to be compensable must be clearly recent in origin and result from a strain arising out of and in the course of the employment and promptly reported to the employer. [1969 PA 317, MCL 418.401(c); MSA 17.237(401)(c). Emphasis supplied.][5]

---

[5] Both of these provisions have been amended several times since plaintiff left work. MCL 418.301; MSA 17.237(301) presently provides:

An employee, who receives a personal injury arising out of and in the course of employment by an employer who is subject to this act at the time of the injury, shall be paid compensation as provided in this act. In the case of death resulting from the personal injury to the employee, compensation shall be paid to the employee's dependents as provided in this act. Time of injury or date of injury as used in this act in the case of a disease or in the case of an injury not attributable to a single event shall be the last day of work in the employment in which the employee was last subjected to the conditions that resulted in the employee's disability or death.

MCL 418.401(1)(b); MSA 17.237(401)(1)(b) provides:

"Personal injury" shall include a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment. An ordinary disease of life to which the public is generally exposed outside of the employment is not compensable. Mental disabilities and conditions of the aging process, including but not limited to heart and cardiovascular conditions, shall be compensable if contributed to or aggravated or accelerated by the employment in a significant manner. Mental disabilities shall be compensable

Defendants contend that alcoholism is not a disease, but, rather, a "social aberration." All three experts testifying in this case, Drs. Smith and Tanay, plaintiff's experts, and Dr. Rauch, defendants' expert, referred to alcoholism as a disease. Dr. Smith described alcoholism as a "lifelong metabolic disease, much like diabetes." Dr. Tanay testified that alcoholism is associated with particular personality disorders which begin during a person's childhood. The WCAB treated plaintiff's chronic alcoholism as a disease. Our review of the professional literature on the subject indicates that various organizations representing health care professionals have officially pronounced alcoholism as a disease.[6] Hence, plaintiff's chronic alcoholism is a disease for purposes of the above statute.[7]

Plaintiff asserts that his chronic alcoholism was an occupational disease. We disagree. A review of the record indicates that the WCAB also did not conclude that plaintiff's alcoholic condition was an occupational disease. The board treated plaintiff's

when arising out of actual events of employment, not unfounded perceptions thereof. A hernia to be compensable must be clearly recent in origin and result from a strain arising out of and in the course of the employment and be promptly reported to the employer.

[6] Organizations which have each officially pronounced alcoholism a disease include: The American Medical Association, American Psychiatric Association, American Public Health Association, American Hospital Association, American Psychological Association, National Association of Social Workers, World Health Organization, and the American College of Physicians. See Gitlow, "Alcoholism: A Disease," in *Alcoholism: Progress in Research and Treatment* (1973), and Jellinek, *The Disease Concept of Alcoholism* (New Haven, Conn.: College & University Press, 1960).

[7] We note that some experts contend that calling alcoholism a disease is merely a "semantic trick" to counter the lingering belief that it is a vice. These experts, as well as other members of our society, decline to recognize alcoholism as a disease and refer to it instead as a behavior disorder, social problem, or a symptom. See Vaillant, *The Natural History of Alcoholism* (1983).

alcoholism as an ordinary disease of life. The proper inquiry in this case, therefore, is whether plaintiff's chronic alcoholism was a disease or disability which was due to causes and conditions which are characteristic of and peculiar to the business of Stroh and which arose out of and in the course of employment. In reaching the question concerning whether chronic alcoholism is a disease which is due to causes and conditions which are characteristic of and peculiar to the business of Stroh and which arose out of and in the course of plaintiff's employment, we must be careful not to equate "circumstance" of employment with "out of and in the course of" employment. *McClure v General Motors (On Rehearing)*, 408 Mich 191; 289 NW2d 631 (1980). If chronic alcoholism can be categorized as an ordinary disease of life to which the public is generally exposed outside of the employment, plaintiff is not entitled to a workers' compensation award. See *Mills v Detroit Tuberculosis Sanitarium,* 323 Mich 200; 35 NW2d 239 (1948).[8] The pertinent question then is whether the board made specific findings as to whether brewery workers are more prone to develop chronic alcoholism than is the general public.

As the Court of Appeals stated in *McClary v*

[8] In *Mills,* we were confronted with a workers' compensation claim for tuberculosis. The plaintiff in *Mills* worked in the kitchen of the defendant's sanitarium, washing dishes used by patients. The evidence showed that the only opportunity that the plaintiff had to come into contact with a bacillus of tuberculosis, the cause of the disease, was from the kitchen dishes.

The statute involved in *Mills,* like the statute in the instant case, provided that ordinary diseases of life were not compensable. While we recognized tuberculosis as an ordinary disease of life, we held that that fact alone did not render the resulting disability noncompensable. Because "plaintiff was exposed in his employment to the risk of contracting tuberculosis in a far greater degree and in a wholly different manner than is the public generally," we found his disabling tuberculosis to be compensable. *Id.,* 209.

*Wagoner,* 16 Mich App 326, 328; 167 NW2d 800 (1969), in exercising our appellate function we must have more than conclusory statements to review. We must know how the board reached its conclusions. "The appeal board should indicate the testimony adopted, the standard followed and the reasoning it used in reaching its conclusion."

We are unable to discern from the opinion of the board whether it found as fact that brewery workers are more prone to suffer from chronic alcoholism (an ordinary disease of life) than is the general public. *Mills, supra.* We note that none of the experts testifying in this case stated that plaintiff's alcoholism was due to the inherent characteristics and peculiarities of his employment in the brewery industry as a production worker responsible for running a machine.[9] Dr. Smith, for example, testified that "Mr. Gacioch would have most likely become an alcoholic anyway and his drinking outside of work eventually [was] far greater than during work." Dr. Rauch opined that individuals who are predisposed to alcoholism, like plaintiff herein, are likely to become an alcoholic no matter where they work.

We are unable to determine from the opinion of the WCAB whether it understood the applicable legal standard and what facts it specifically relied upon in reaching its conclusion that plaintiff's alcoholism was compensable under the Workers' Disability Compensation Act.

We therefore remand this case to the WCAB for its statement of the law and the specific facts

[9] In 1975, the year after plaintiff's last day of work at Stroh Brewery, almost ten million American adults were estimated to be either alcoholic or problem drinkers. This represented seven percent of the population eighteen years or older. See United States Department of Health, Education and Welfare, Public Health Service Alcohol Drug Abuse and Mental Health Administration, *The Alcohol, Drug Abuse and Mental Health National Data Book* (January, 1980).

relied upon to support its conclusion. *McClary, supra.* We do not retain jurisdiction.

WILLIAMS, C.J., concurred with ARCHER, J.

LEVIN and CAVANAGH, JJ., concurred in the result only.

BOYLE, J. (*concurring*). I am not convinced that under either the statute or the case law[1] controlling at the time of plaintiff's last day of employment at Stroh Brewery Company, alcoholism or a predisposition thereto, whether or not aggravated or accelerated by the conditions of employment, was contemplated as a compensable injury. Because I am not persuaded that the Legislature intended to award workers' compensation benefits under the facts of this case, I would reverse the decision of the Court of Appeals and vacate the workers' compensation award.

RILEY, J., concurred with BOYLE, J.

BRICKLEY, J. (*dissenting*). I concur in the result reached by the majority, but write separately to express an analysis that I believe to be more responsive to the issues as framed by the parties and the lower tribunals.

The hearing referee found that the plaintiff brewery worker "has failed to sustain the burden of proof . . . that his disability was the result of any injury *or* occupational disease arising out of and in the course of his employment." (Emphasis supplied.) He also held that "[p]laintiff's illness was not caused, aggravated or accelerated by con-

---

[1] This case does not present an occasion to reconsider *Miklik v Michigan Special Machine Co,* 415 Mich 364; 329 NW2d 713 (1982), and *Kostamo v Marquette Iron Mining Co,* 405 Mich 105; 274 NW2d 411 (1979), which I perceive concerned conditions entirely distinguishable from the condition presented in this case.

ditions characteristic and peculiar to the business of the defendant-employer."

The WCAB reversed the referee's decision, finding that, although plaintiff was predisposed toward alcoholism, he was not an uncontrolled drinker when he was hired. It found that plaintiff's alcoholism was accelerated by the availability of free beer at the workplace. Plaintiff's witness, Dr. Smith, testified that, while free beer did not cause plaintiff's alcoholism, "[t]he availability of easily accesable [sic] alcoholic beverages no doubt contributed to the continuation of his alcoholism," that it "probably accelerated the speed of his disease process," and that the employment experience "probably contributed significantly to its course."

Thus the WCAB, citing *Miklik v Michigan Special Machine Co,* 415 Mich 364; 329 NW2d 713 (1982), and *Kostamo v Marquette Iron Mining Co,* 405 Mich 105; 274 NW2d 411 (1979) (heart disease cases), concluded that "it is beside the point that what would have happened anyway happened sooner because of exposure at work," because the availability of beer at Stroh's was also "responsible for the irreversible physical damage and personality disintegration testified about" and, finally, that, if "damage is done at work, compensation is in order."

The Court of Appeals found ample evidence to support the WCAB findings of fact and, citing *Deziel v Difco Laboratories, Inc (After Remand),* 403 Mich 1; 268 NW2d 1 (1978), posed the question, "Did the claimant's employment aggravate, accelerate, or combine with some internal weakness or disease to produce the personal injury?" It answered in the affirmative.

Judge GILLIS, in dissent, agreed with the hearing referee that "decedent did not receive a personal

injury arising out of or in the course of his employment."

All agree that the pertinent sections of the statute are as follows:

> An employee, who receives a personal injury arising out of and in the course of his employment by an employer who is subject to the provisions of this act, at the time of such injury shall be paid compensation in the manner and to the extent provided in this act, or in a case of his death resulting from such injuries the compensation shall be paid to his dependents as defined in this act. Time of injury or date of injury as used in this act in the case of a disease or in the case of an injury not attributable to a single event shall be the last day of work in the employment in which the employee was last subjected to the conditions resulting in disability or death. [MCL 418.301(1); MSA 17.237(301)(1).]

and

> (c) "Personal injury" shall include a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment. Ordinary diseases of life to which the public is generally exposed outside of the employment shall not be compensable. [MCL 418.401(c); MSA 17.237(401)(c).]

The hearing referee said that the plaintiff suffered neither personal injury nor an occupational disease. The WCAB did not use the words "personal injury" in its conclusion, but did utilize a personal injury analysis and cited cases in which the decision rested on a personal injury analysis.

The Court of Appeals expressly found a personal injury. In view of the finding of a personal injury

by both the WCAB and the Court of Appeals, apparently neither tribunal found it necessary to pursue an occupational disease analysis. The arguments of the parties before this Court exclusively center on a personal injury analysis, although they differ as to the outcome.

The majority, on the other hand, in arriving at its decision, pursues an occupational disease analysis.

The statute makes it clear that "personal injury shall include . . . [an occupational] disease." Thus, occupational diseases are only one form of personal injury which, to be compensable, must be "due to causes and conditions which are characteristic of and peculiar to the business of the employer . . . ."

When the occupational disease concept was introduced into the scheme of workers' compensation in 1937, only an "accidental or fortuitous event" qualified for compensation under what the statute then described as "personal accident" or "accidental injury" under the predecessor of § 301. See, e.g., *Hagopian v Highland Park,* 313 Mich 608, 619; 22 NW2d 116 (1946).

> We have frequently held that under the compensation act, prior to the adoption of the occupational disease amendment, . . . one . . . cannot recover unless there is an accident or a fortuitous event causing the disability. It was for this reason that there was a special provision made in regard to hernia in the occupational disease amendment to the act.

In 1943, the statute was again amended to delete the limitation of only enumerated occupational diseases. 1943 PA 245. At the same time, "personal injury" was substituted for "personal accident" under the predecessor to § 301. Even

with the addition of "personal injury" as the catchall coverage of the act, this Court continued to limit the § 301 predecessor coverage.

The *Hagopian* Court, in a four-to-three opinion, held that "accident" was changed to "injury" only to accommodate the occupational disease provision, not to broaden the coverage of the main injury provision of the act.

> There was nothing whatsoever in the title to the act to indicate that the aggravation of a pre-existing sickness or disease without any accidental or fortuitous event was covered. [*Hagopian, supra,* p 620.]

Two years later, in interpreting the occupational disease provision, this Court said in a unanimous opinion, "we think it was the intention of the legislature to allow compensation for disability resulting from a disease contracted in the course of the employment and brought about by the nature of such employment and the conditions under which it was carried on." *Mills v Detroit Tuberculosis Sanitarium,* 323 Mich 200, 212; 35 NW2d 239 (1948).

This history shows that the term "personal injury" was originally intended to cover the traditional accident or occurrence that is work-connected, and it was not envisioned that it would include occupational diseases of any sort, let alone ordinary diseases of life which are aggravated by work.

Expansion of the term "personal injury" over the years has now resulted in that term's inclusion of not only occupational diseases, but ordinary diseases of life that need not be caused by employment, but only be "aggravated or accelerated" by employment. See *Zaremba v Chrysler Corp,* 377

Mich 226; 139 NW2d 745 (1966), and *Miklik, supra.* Included in this ambit are heart-related diseases and emotional and mental disorders. Even suicide can be a basis for compensation. *Hammons v Highland Park,* 421 Mich 1; 364 NW2d 575 (1984).

Since many of these diseases are progressive, ordinary activities of life will aggravate and accelerate them. Given that work fills the major portion of most persons' lives, a finding that an ordinary disease of life is aggravated and accelerated by employment is an unremarkable development.

All of this, of course, has atrophied the occupational disease section of the act, leaving it no more than a signpost of the more limited original intent of "personal injury."

The debates over the expansion of the concept of "personal injury" are adequately chronicled in the journals of this Court and the Legislature, and I do not intend to add to them. I do think, however, that we owe a candid analysis of this case, in keeping with the state of the law as we have enunciated it. We do not do that by ignoring the arguments and conclusions of the parties and the lower tribunals who know, as we must, that the term "personal injury" has eclipsed "occupational disease."

I am satisfied that, in accepting the prevailing view that alcoholism is a disease—that the disease, while not caused by plaintiff's employment, was nonetheless contributed to by the conditions of his employment—the WCAB and Court of Appeals have correctly applied the existing law of "personal injury arising out of and in the course of employment" to a disease that they found was contributed to by circumstances of the employment, even though unrelated to the plaintiff's duties. Cf. *Crilly v Ballou,* 353 Mich 303; 91 NW2d 493 (1958), and

*Nemeth v Michigan Building Components,* 390
Mich 734; 213 NW2d 144 (1973).

The net result of this finding, of course, is that
an employee who cannot control his drinking, who
declines opportunities of assistance to check the
effects of his disease, and who ignores warnings of
discipline for his substance abuse, will be compen-
sated by the employer for a disease that was not
caused by his employment, but rather, at most,
was contributed to by a break-period program
requested by company employees and was unre-
lated to the plaintiff's duties. While most of these
conditions standing alone have not been found by
this Court to stand in the way of a recovery for a
personal injury, taken together, in this factual
setting, I find such a result simply unacceptable.

I cannot think of a clearer distortion of the
laudatory goals of a program which has, overall,
contributed so much to the principle of social
justice in the workplace than that that would be
visited by such a result. I do not think that the
opponents of workers' compensation could wish for
a better weapon in their arsenal than this Court's
endorsement of such a result.

This case, in my judgment brings home to roost
the tenuous definition of "personal injury" that
has so expanded the original intent of those words.
The Legislature itself has been moved to tighten
that definition in respect to "[m]ental disabilities
and conditions of the aging process" by adding the
requirement that such "injuries" are compensable
only if contributed to "in a significant manner."
Our adoption of the Court of Appeals result here
would surely bring a similar response as to dis-
eases of addiction. As Judge GILLIS said in dissent:

> To allow compensation in such a case such as
> this would be precedent for allowing compensation

in such situations as where an employee is disabled as a result of complications related to obesity where that worker regularly dined in a company cafeteria where the prices were artificially low due to subsidization by the employer. Is lung cancer compensable merely because an employee is allowed to smoke at his desk and is provided with an ashtray? The situations begin to border on the ridiculous.

Just as we have by case law contributed to the evolution of the standard of compensability for personal injuries, standards which the Court of Appeals understandably found it within its role to apply in this case, we should bring those standards to heel in a setting such as this. Although alcoholism is a devastating disease to those who are stricken by it, unlike many other diseases, it is interrelated with behavior. Personal motivation is an important element of recovery.[1] (See testimony of Dr. Smith, 1983 WCABO 691, 711-712.)

[1] See Hammond, ed, *Almost all you ever wanted to know about alcoholism* (Lansing, Michigan: Alcohol Research Information Service, 1986):

> With some diseases the doctor may put the patient in the hospital, prescribe certain drugs, leave his orders with the head nurse and the chances are nearly 100% that the patient will get well. In many such cases, the patient may understand little if anything about the disease, and with a minimum of the patient's cooperation, he is cured. Alcoholism isn't that kind of illness.

\* \* \*

> [S]o much depends on the cooperation of the patient, the alcoholic.

\* \* \*

> The successful treatment of the alcoholic requires a lifetime commitment to total sobriety.

Also see Bourne & Fox, eds, *Alcoholism: Progress in Research and Treatment* (New York: Academic Press, 1973), pp 291-293.

I also find the following authority to be persuasive:

> Assuming that we have made a reliable and valid diagnosis

Motivation, like culpability, generally has had no relevance in the workers' compensation scheme; but when the personal injury concept has been so broadened as to include nonfortuitous and nonaccidental progressive diseases such as alcoholism that are interrelated with behavior, to ignore motivation would lead to absurd results.

For these reasons, I would hold that the general rule allowing for compensability where there is work aggravation of preexisting diseases should not prevail where the aggravating conditions are not required by the job and the disease is one from which recovery primarily depends upon personal motivation.

I would conclude that the hearing referee was correct in finding no basis for an occupational disease and reverse the Court of Appeals regarding the finding of a personal injury.

---

of alcoholism, we have yet another problem to deal with before any treatment can begin. We must, somehow, get the alcoholic to want treatment. It would be nice if everyone who needed therapy for alcohol problems would drop by their community alcohol center and check in for treatment. Clearly, however, things just aren't that simple. Much of the time, people with alcohol problems not only refuse any efforts toward treatment but deny that they have a drinking problem. Denial, self-deception, rationalizing and a whole host of other psychological mechanisms work against easy therapeutic intervention. [Ward, "Motivation in Treatment," in *Alcoholism: Introduction to Theory and Treatment* (Dubuque, Iowa: Kendall/Hunt, 1980), ch 7, p 252.]

See also Johnson, *I'll Quit Tomorrow* (New York: Harper & Row, 1973), p 63, where the author describes the first step of a recovery program. "First, he makes a mental commitment to cooperate in his treatment and to adopt a measure of responsibility for his own recovery."