PIERCE v GENERAL MOTORS CORPORATION

Docket No. 91687. Argued October 14, 1992 (Calendar No. 9). Decided August 3, 1993. Separate opinion by LEVIN, J., filed August 4, 1993. Rehearing denied 444 Mich 1201.

Paul E. Pierce sought workers' compensation, claiming nervous disability and related alcoholism as a result of employment with the General Motors Corporation. A hearing referee found total disability, and the Workers' Compensation Appeal Board affirmed. The Court of Appeals, HOOD, P.J., and WEAVER and MARILYN J. KELLY, JJ., affirmed in an unpublished opinion per curiam (Docket No. 125457). The defendant appeals.

In an opinion by Justice RILEY, joined by Justices BRICKLEY, BOYLE, and GRIFFIN, the Supreme Court *held:*

Alcoholism is not a compensable personal injury under chapter three of the Workers' Disability Compensation Act. The WCAB erroneously included the plaintiff's personal addiction to alcohol as a variable in its decision to award disability benefits.

1. It is unclear from the factual findings of the WCAB whether the plaintiff's alcoholism was the result of an underlying psychiatric disorder or whether the psychiatric disorder arose out of an increase in the plaintiff's alcoholic condition. In order to be awarded benefits for personal injury, a claimant must show injury arising out of and in the course of employment. Although compensation is not awarded for a disability caused by an ordinary disease of life, benefits may be recovered where the employment aggravates, accelerates, or combines with a preëxisting condition to produce the injury.

2. It is not work and its attendant stresses that aggravate alcoholism; it is alcohol. It is not a job or occupation that compels alcoholics to consume alcohol; it is the disease from which they suffer. Alcoholism is a progressive disease, aggravation of which is caused by the alcohol itself rather than by employment.

3. Alcoholism is not a personal injury that arises out of and in the course of employment for purposes of a workers' compensation disability. The WCAB found that the plaintiff's disability resulted from emotional problems and alcoholism. Because the plaintiff's alcoholism was a significant factor in the board's

finding of disability, vacation of the decision of the Court of Appeals and remand to the board is required for a determination whether the plaintiff suffered a disabling personal injury separate and apart from his alcoholism.

Vacated and remanded.

Chief Justice CAVANAGH, joined by Justice MALLETT, dissenting, stated that the constitution provides that findings of fact in workers' compensation proceedings are conclusive absent fraud unless otherwise provided by law. In this case, there was evidence supporting the findings of the WCAB regarding the injury that disabled the plaintiff from working, which, as a matter of law, supports the WCAB's award of benefits for the injury.

Justice LEVIN, writing separately, stated that the workers' compensation definition of "personal injury" enumerates exceptions to coverage—different rules for mental disabilities, diseases of the aging process, heart and cardiovascular conditions. It enumerates no exception for alcoholism and there is nothing to indicate legislative intent to exclude disabilities involving alcoholism from coverage. Unless a worker intentionally causes an injury, benefits may not be recovered even though the worker is at fault, and even if the work or stress of work is not the sole cause. Where an injury or disability arises from a preëxisting physical or mental condition and events at work, the worker need not establish that the work connection is primary.

In this case, the WCAB found that the plaintiff's disability is not the result of addiction, but was the result of aggravation of preëxisting alcoholism coupled with emotional disorders caused by work stress. There was evidence to support the findings of the WCAB, and those findings, as a matter of law, support an award of benefits for the injury found by the WCAB to have disabled the plaintiff from working. Findings of facts in workers' compensation proceedings are conclusive in the absence of fraud unless otherwise provided by law. The WCAB found a personal injury that was not simply the result of the progression of the plaintiff's alcoholism, and thus found a personal injury independent of the progression of his alcoholism by reviewing the actual work events. It further found that those work events triggered mental or emotional disequilibrium and were personal injuries. There was a specific finding of fact that the plaintiff was not just imagining that work stress caused his problems, but that work stress was the problem, or at least a problem causing his disability.

*Sachs, Waldman, O'Hare, Helveston, Hodges & Barnes, P.C.* (by *Granner S. Ries*), for the plaintiff.

*Braun, Kendrick & Finkbeiner* (by *Bruce L. Dalrymple* and *Scott C. Strattard*) for the defendant.

RILEY, J. In this case we are asked to review the award of workers' compensation benefits granted on the basis of alcoholism and a related nervous condition suffered by plaintiff.[1] We find that the WCAB erroneously included the plaintiff's personal addiction to alcohol as a variable in its decision to award disability benefits. Thus, we vacate the decision of the Court of Appeals and remand to the board to determine whether plaintiff sustained any disabling personal injury that is separate and apart from any disability caused by his alcoholism.

I

Plaintiff, born January 11, 1942, began his em-

---

[1] The workers' compensation statutes applicable at the time this claim was filed are: MCL 418.301(1); MSA 17.237(301)(1) which provided:

> An employee, who receives a personal injury arising out of and in the course of his employment by an employer who is subject to the provisions of this act, at the time of such injury, shall be paid compensation in the manner and to the extent provided in this act, or in case of his death resulting from such injuries the compensation shall be paid to his dependents as defined in this act. Time of injury or date of injury as used in this act in the case of a disease or in the case of an injury not attributable to a single event shall be the last day of work in the employment in which the employee was last subjected to the conditions resulting in disability or death.

And, MCL 418.401(c); MSA 17.237(401)(c) which provided:

> "Personal injury" shall include a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment. Ordinary diseases of life to which the public is generally exposed outside of the employment shall not be compensable.

ployment with defendant in May 1963. In his petition for hearing, plaintiff claimed disability in the form of personal injury or disablement from occupational disease resulting from repeated and injurious harassment in the course of employment. The nature of the disability was indicated as nerves and a nervous disability. Before the hearing referee, plaintiff testified that when he began working for defendant he drank moderately and experienced no nervous problems. Plaintiff testified further, however, that he developed a nervous condition in 1967 or 1968.[2]

During his employment, plaintiff took several sick leaves, citing "nerves" as his complaint. The record establishes that he was hospitalized several times for acute alcoholism and associated nervous problems, including once, in September 1981, after he discontinued working for defendant. Plaintiff alleged several general incidents of harassment, such as being given work outside his job assignment, being blamed for the malfunction of defective machines, and not being properly trained to operate the larger trucks. Plaintiff alleges that this harassment provoked him to drink and caused him to develop a nervous disorder. He testified that until the last year of his employment, he was able to drink, control his nervous condition, and still function at work.

Plaintiff asserts that his last year at work with defendant was the most devastating, and was the cause of the ultimate permanent disability that precludes him from working. In January 1981, just before his final disability leave, plaintiff was involved in a mishap while operating a plant truck. The truck tipped over because of improper loading

---

[2] Plaintiff testified that this nervous condition began about ten years after he began working with defendant, which would be about 1973. He then added that the condition began in 1967 or 1968.

and unloading. Plaintiff blamed his supervisor for the mishap, alleging a failure to instruct him regarding the proper loading of a truck. Plaintiff's last day of work was January 9, 1981. The hearing referee determined the date of the disability to be January 19, 1981. Plaintiff retired with permanent disability effective September 1, 1981. At the time of the Workers' Compensation Appeal Board decision, plaintiff was still a drinking alcoholic.

The hearing referee granted plaintiff's claim for an open award on the basis of a nervous disability. The WCAB, in a two to one decision, affirmed the hearing referee's decision. The WCAB majority found that "plaintiff's disability stems from emotional problems and drinking, such that we cannot extract one from the other." Slip op at 1. The board majority further found that plaintiff's father was an alcoholic, that plaintiff began drinking at age thirteen or fourteen, that he is presently unable to control his drinking, *id.* at 9, and then proceeded to analyze the facts under *Deziel v Difco Laboratories, Inc (After Remand),* 403 Mich 1; 268 NW2d 1 (1978):

> [I]f plaintiff's *emotional* problems are linked to his work and were caused or aggravated by his work, contributing to his disability, in our view, plaintiff is entitled to compensation . . . . [*Id.* at 9.][3]

The board majority concluded that 1) plaintiff is totally disabled; 2) although plaintiff's testimony is vague with respect to dates, his testimony regarding job transfers, consultations with his union, and a work mishap establish the existence of work

[3] The board did not directly address plaintiff's disability with respect to alcoholism.

incidents triggering his emotional condition, and constitute personal injuries; and 3) that plaintiff honestly believes that work caused his disability. The WCAB majority refused to utilize the analysis of *Gacioch v Stroh Brewery Co,* 426 Mich 612; 396 NW2d 1 (1986), finding the circumstances in *Gacioch* to be so unique as to limit the decision to its facts.

In a separate opinion, the dissenting board member stated that she would find that plaintiff failed to establish a sufficient causal nexus between his employment and his chronic alcoholism. WCAB, slip op at 13. The dissent concluded that a work nexus was not established because plaintiff's nervous condition began in 1967, but plaintiff continued to work until 1981, and by plaintiff's own admission, he could drink alcohol and still work.

The Court of Appeals affirmed the findings and decision of the WCAB.[4] The Court identified plaintiff's illness as a psychiatric disability that caused or aggravated plaintiff's alcoholism. It distinguished *Gacioch* on the basis of the plaintiff's allegation in *Gacioch* of a disability due solely to alcoholism, while in the present case plaintiff alleges a psychiatric disability that is only partially linked to alcoholism.[5] The Court then opined that the test established in *Deziel* was applicable, and that there was sufficient, competent evidence to support the board's findings.[6] We then granted defendant's application for leave to appeal.[7]

---

[4] Unpublished opinion per curiam of the Court of Appeals, decided May 10, 1991 (Docket No. 125457).

[5] *Id.* at 1.

[6] *Id.* at 2.

[7] 439 Mich 1012 (1992).

II

It is unclear from the findings of the WCAB[8] whether plaintiff's alcoholism stemmed from an underlying psychiatric disorder or whether the psychiatric disorder arose out of an increase in plaintiff's alcoholic condition.[9] Hence, we disagree with the Court of Appeals identification of plaintiff's illness as a psychiatric illness that caused plaintiff's alcoholism. We also disagree with plaintiff's assertion on appeal that it has been established that plaintiff's alcoholism is a sequela of his nervous disorder.

The deposition testimony of the medical experts produced by both defendant and plaintiff demonstrates the ambiguity of plaintiff's disability. From their testimony, it is not evident which disorder precipitated the other, or if either could have existed independently. Plaintiff was a moderate

---

[8] This Court has the responsibility to review questions of law involved in the final order of the appeal board, determine whether there was fraud associated with the findings of fact, and decide whether there is any competent evidence to support the findings of fact made by the board. Const 1963, art 6, § 28; MCL 418.861; MSA 17.237(861). *Aquilina v General Motors Corp*, 403 Mich 206, 213; 267 NW2d 923 (1978). The WCAB found that plaintiff is an alcoholic, and that he has "emotional problems [that] are inextricably connected to his drinking problems, which, together, disable plaintiff." WCAB, slip op at 9.

[9] Alcoholism and major depression appear to be independent entities, but symptoms of depression may develop during the course of alcoholism, and some patients with affective disorders may drink more when they are ill. Substance abuse also may increase the intensity of symptoms of preëxisting primary psychiatric disorders. However, research studies indicate that 70 to 80 percent of patients with severe depression do not increase their drinking, and that only 5 to 10 percent of patients with primary major depressive disorders actually develop secondary alcoholism . . . . [United States Department of Health and Human Services, *Seventh Special Report to the US Congress on Alcohol and Health from the Secretary of Health and Human Services* (Maryland: National Institute on Alcohol Abuse and Alcoholism, 1990), p 421. Citations omitted.]

drinker before beginning work in 1963 for defendant, and before 1963, he did not suffer from any nervous condition. Plaintiff testified that his nervous condition developed about 1967 or 1968, and his drinking became progressively heavier during his employment with defendant. Plaintiff further testified that until his last year he could function at work despite his drinking and nervous condition. Although ambiguous with regard to the exact etiology of plaintiff's disability, the factual findings made by the board and other evidence in the record clearly demonstrate that alcoholism played a primary role in plaintiff's claimed injury.

We reject the invitation by plaintiff to expand the chapter three personal injury analysis of workers' compensation claims to cover diseases of addiction.[10] In order to be awarded benefits under a chapter three personal injury analysis, the claimant must show that he suffered a personal injury arising out of and in the course of his employment. Although no compensation is awarded for a disability caused by an ordinary disease of life, a claimant may recover workers' compensation benefits when his employment aggravates, accelerates, or combines with a preëxisting condition to produce a personal injury.

Alcoholism is a progressive disease.[11] The compulsion and the consumption will accelerate until it is interrupted.[12] It is in the nature of the disease

---

[10] In the present case, plaintiff does not argue that he has established an occupational disease. Rather, he argues that under a chapter three personal injury analysis he has established that the employment aggravated, accelerated, or combined with his preëxisting condition to produce a personal injury.

[11] Contrary to the dissent's assertion (*post,* p 174), we do not "blame" the alcoholic for his addiction. But we do assert what is now conventional wisdom in the treatment of addictions that one of the symptoms of the disease is the need for the alcoholic to find and fix blame for his drinking.

[12] Once the alcoholic begins to drink, he may be no more able

that its victims will find conditions and circum-
stances at home, at work, and in between to justify
the increased need for alcohol.[13] It is not work and
its attendant stresses that aggravate alcoholism; it
is alcohol.[14] It is not a job or occupation that
compels alcoholics to consume alcohol; it is the
disease from which they suffer.[15] Individuals who
suffer from alcoholism hold the most essential key
to their recovery.[16] It defies logic and what is now

---

to control the compulsion to continue drinking than the tuber-
culosis patient can voluntarily control his coughing. [Ham-
mond, ed, *Almost All You Ever Wanted to Know\* About
Alcohol \*But Didn't Know Who to Ask* (Michigan: Alcohol
Research Information Service, vol 11, no 2, 1991), p 92.]

The National Council on Alcoholism and Drug Dependence, Inc.,
and the American Society of Addiction Medicine, in 1990, defined
alcoholism as follows:

"Alcoholism is a primary, chronic disease with genetic, psy-
chosocial and environmental factors influencing its develop-
ment and manifestations. The disease is often progressive and
fatal. It is characterized by continuous or periodic: impaired
control over drinking, preoccupation with the drug alcohol, use
of alcohol despite adverse consequences, and distortions in
thinking, most notably denial." [National Council on Alcohol-
ism and Drug Dependence, Inc., pamphlet, "The Disease of
Alcoholism" (1993).]

[13] The Supreme Court of North Dakota has acknowledged that
"providing an excuse for voluntarily drinking [work environment and
unfavorable work appraisal] cannot be a substantial contributing
factor to the alcoholism." *Darnell v North Dakota Workers Compen-
sation Bureau,* 450 NW2d 721, 726 (ND, 1990).

[14] Alcoholics can always give a reason why they drink: Our
team won, or our team lost; it's too hot, it's too cold, women
alcoholics drink because they have nothing to do at home, or
because they have too much to do in a career. [*Alcohol Prob-
lems and Alcoholism: A Comprehensive Survey,* James E.
Royce (The Free Press, Macmillan, New York, 1989), p 98.]

[15] [G]enerally speaking, alcoholism is repeated drinking that
causes trouble in the drinker's personal, professional, family or
school life. ["The Disease of Alcoholism," n 12 *supra.*]

[16] Counseling often includes a confrontational focus, based on

known about the nature of alcoholism to declare that a job or occupation is responsible for acceler-: ating or aggravating a worker's alcoholism when alcoholism is a progressive disease, and aggravation of which is caused by the alcohol itself rather than by employment.[17]

In *Gacioch,* we recognized that chronic alcoholism is a disease. *Id.* at 618.[18] We remanded that

the rationale that alcoholics must be confronted with the reality of their problem before behavior change can take place. [*Seventh Special Report,* n 9 *supra,* p 409.]

One of the problems with the disease concept of alcoholism is that those who are alcoholic may find it difficult to understand their personal responsibility, not only in developing alcoholism, but in recovery as well. Alcoholism is the kind of disease in which the patient has an active role in development of the condition, and the patient must also play an active role in the recovery process. [*Almost All You Ever Wanted to Know, supra,* p 92.]

The counselor expects the client to assume responsibility for his actions. You do not buy into the client's view of himself as either a pawn of fate or helpless victim. . . . You make it clear that you see the client as an adult who is accountable for his choices. Simultaneously, you are aware that an alcoholic, when he consumes alcohol, is abdicating control of his life to a drug. [Kinney & Leaton, *Loosening the Grip: A Handbook of Alcohol Information* (Missouri: The C. V. Mosby Company, 1978), p 150.]

[17] *Any* alcoholic who seeks assistance and is willing to actively participate in rehabilitation efforts can realistically expect to lead a happy, productive life. [*Loosening the Grip,* n 16 *supra,* p 133.]

The only cure for alcoholism is within the alcoholic. When he makes up his mind to stop, the cure starts. It follows, then, that he has the control. If he chooses not to exercise the control, others should not be burdened. [*Arnoto v Bd of Review, Ohio Bureau of Employment Services,* 19 Ohio App 3d 308, 310; 484 NE2d 245 (1984) (O'Neill, P.J., dissenting).]

[18] In *Gacioch,* this Court assessed the validity of the plaintiff's claim of disability due to alcoholism under a chapter four analysis. An occupational disease analysis requires the claimant to prove that his disease or disability is due to causes and conditions that are characteristic of and peculiar to the employer and arises out of and in the course of employment.

case to the WCAB for a determination whether the plaintiff satisfied his burden of proving his claim: that the claimant, as a brewery worker, was more prone to develop alcoholism than the general public because of conditions characteristic of and peculiar to the business of the defendant. The *Gacioch* analysis confined compensation for diseases of addiction into a chapter four occupational disease analysis. Justice BRICKLEY, writing separately, favored denial of compensation for aggravation of preëxisting diseases where the "aggravating conditions are not required by the job and the disease is one from which recovery primarily depends upon personal motivation." *Id.* at 629. Where a personal addiction plays a significant role in a claimed mental or emotional injury, a finding that such an injury is work related should be precluded.[19] Justice BOYLE, in a concurring opinion joined by Justice RILEY, indicated that she was not convinced that "alcoholism or a predisposition thereto, whether or not aggravated or accelerated by the conditions of employment, was contemplated as a compensable injury." *Id.* at 621.

Because there is no indication that the Legislature intended to include alcoholism as a chapter three personal injury or a preëxisting condition that is aggravated, accelerated, or combined with conditions of employment resulting in disability or death, and because there exists persuasive evi-

---

[19] Florida has reached a similar conclusion in its workers' compensation law, Fla Stat Ann 440.02(1), precluding workers' compensation benefits for disability due to alcoholism. Two reasons behind this statute are that (1) the problem of alcoholism is self-inflicted rather than industry related, hence industry should not be required to bear the consequences of the problem; and (2) workers' compensation is not a general health insurance system. See *Milmir Construction v Smith,* 582 So 2d 52, 53, n 1 (Fla App, 1991). See also *Dan River, Inc v Shinall,* 186 Ga App 572, 573; 367 SE2d 846 (1988) (Ga Code Ann 34-9-1[4] establishes that alcoholism is not deemed a personal injury arising out of and in the course of employment).

dence to the contrary, we adhere to the view that alcoholism is not a "personal injury" that arises out of and in the course of employment for purposes of a workers' compensation disability. In this case, we conclude that alcoholism is not a compensable personal injury under chapter three of the Workers' Disability Compensation Act.

In the present case, the WCAB found that plaintiff's disability resulted from emotional problems *and* alcoholism. Because the plaintiff's alcoholism was a significant factor in the board's decision that the plaintiff was disabled, we vacate the Court of Appeals decision and remand to the board to determine whether the plaintiff suffered a disabling personal injury that is separate and apart from his alcoholism. If there is insufficient evidence of an independent disabling personal injury, plaintiff has failed to carry his burden of proof, and compensation should therefore be denied.

BRICKLEY, BOYLE, and GRIFFIN, JJ., concurred with RILEY, J.

CAVANAGH, C.J. (*dissenting*). The Workers' Compensation Appeal Board found that Paul E. Pierce "has emotional problems and these are inextricably connected to his drinking problems, which, together, disable" him from working, and that "his drinking was aggravated by his work" at General Motors. The WCAB further found that Pierce established the requisite "work-related nexus" and "work incidents that triggered mental or emotional disequilibrium" that were "personal injuries." The Court of Appeals, on remand from this Court, affirmed.[1]

---

[1] Unpublished opinion per curiam, decided May 10, 1991 (Docket No. 125457).

The issue presented is whether there is *any* evidence[2] to support those findings, and, if so, whether those findings support, as a matter of law, the award of benefits for a disabling mental disorder.

I would affirm the Court of Appeals and the WCAB because there was evidence that supports the findings of the WCAB, and because those findings, as a matter of law, support an award of benefits for the injury found by the WCAB to have disabled Pierce from working.

The majority ignores the constitutional imperative[3] that "[f]indings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law."[4] The statute does not "otherwise provide," but rather reaffirms the principle embedded in the constitution.[5]

MALLETT, J., concurred with CAVANAGH, C.J.

The following opinion was filed with the Clerk of the Supreme Court on August 4, 1993, after the release of the opinion of the Court on August 3, 1993—REPORTER.

LEVIN, J. (*separate opinion*). The Workers' Compensation Appeal Board found, as set forth in the majority opinion, that Paul E. Pierce suffered a disabling personal injury resulting "from emo-

[2] *Scroggins v Corning Glass Co,* 382 Mich 628; 172 NW2d 367 (1969).

[3] The majority acknowledges that in reviewing the findings of the WCAB, the judicial role is to "decide whether there is *any* competent evidence to support the findings of fact made by the board," but does not observe this limitation on the judicial function in deciding this case. *Ante,* p 143, n 8. (Emphasis added.)

[4] Const 1963, art 6, § 28.

[5] The findings of fact made by the board acting within its powers, in the absence of fraud, shall be conclusive. The court of appeals and the supreme court shall have power to review questions of law involved in any final order of the board . . . .
[MCL 418.861; MSA 17.237(861).]

tional problems *and* alcoholism."[1] The wcab further found that Pierce's "emotional problems" were "inextricably connected to his drinking problems, which, together, disable" him from working, and that "his drinking was aggravated by his work" at General Motors,[2] and awarded compensation. The Court of Appeals, on remand, affirmed.[3]

The majority vacates the Court of Appeals decision and sets aside the award of compensation because Pierce's "alcoholism was a *significant factor* in the board's decision" that Pierce was disabled, and remands to the wcab to determine whether Pierce "suffered a disabling personal injury that is *separate and apart from his alcoholism*."[4] The majority directs that "[i]f there is insufficient evidence of an *independent* disabling personal injury," compensation shall be denied.[5]

A

The majority concludes, as a matter of law, that the stress of work can never be "*responsible* for accelerating or aggravating" the "*progressive disease*" of alcoholism.[6] The sole cause of alcoholism and of any resulting disability, as a matter of law, is always the failure of the worker to stop drinking. This is so because a worker who is an alcoholic has the "most essential key"—abstinence—to the avoidance of disability, and thus could avoid

---

[1] *Ante,* p 148. (Emphasis in original.)

[2] The wcab also found that Pierce established the requisite "work-related nexus" and "work incidents that triggered mental or emotional disequilibrium" that were "personal injuries."

[3] Unpublished opinion per curiam, decided May 10, 1991 (Docket No. 125457).

[4] *Ante,* p 148. (Emphasis added.)

[5] *Id.* (Emphasis added.)

[6] *Id.,* p 146. (Emphasis added.)

the progression of the disease and resulting disability by eliminating consumption of alcohol.[7]

The majority thus transforms a factual issue, within the exclusive province of the WCAB, into a question of law, within the exclusive province of this Court, premised on the majority's findings of fact and conclusion that the sole cause of what it acknowledges is the "disease" of alcoholism[8] is always the worker's failure to abstain from drinking.

The essence of the majority's analysis is that, to the extent alcoholism plays a "significant"[9] role in the worker's personal injury and disability, the *worker is "responsible"*[10] for his personal injury and disability—the personal injury and disability is the worker's *fault*—because he did not stop drinking.

Workers' compensation is, however, the paradigmatic no-fault liability act. Unless the worker intentionally causes his own injury, the worker may recover benefits *even though he is at fault and even though the work or stress of work is not the sole cause.* Although the worker is suffering from a preëxisting condition—here the disease of alcoholism, in another case heart disease or emphysema—that is accelerated or aggravated by the work or the stress of work, compensation ordinarily may be awarded for a resulting disability.

B

The majority's analysis ignores a basic premise

[7] *Id.,* p 145.

[8] *Id.,* pp 144-146.

See also *id.,* p 144 ("diseases of addiction"); *id.* ("Alcoholism is a progressive disease"); *id.,* n 11 ("symptoms of the disease"); *id.,* p 146 ("In *Gacioch* [v *Stroh Brewery Co,* 426 Mich 612; 396 NW2d 1 (1986)], we recognized that chronic alcoholism is a disease").

[9] *Ante,* p 148.

[10] *Ante,* p 146. (Emphasis added.)

of the law, fault or no fault, civil or criminal. A
person who is subject to liability is not absolved of
responsibility although, as it is generally put, the
victim has an eggshell head. A person with a weak
back, a weak heart, or a mental disorder may
recover workers' compensation benefits if the
stress of work accelerates or aggravates to the
point of disability the back, heart, or mental condi-
tion. The majority does not adequately explain
why a person who comes to the job with a ten-
dency to alcoholism *and* mental problems, should
not also be entitled to recover benefits if the stress
of work accelerates or aggravates his alcoholism
*and* mental condition, in combination, to the point
of disability.

It is well established that, where an injury or
disability arises from a preëxisting physical or
mental condition and events at work, the worker
need not establish that the work connection is
"primary,"[11] and thus it is not material, and com-

---

[11] The majority states:

> Although ambiguous with regard to the exact etiology of
> plaintiff's disability, the factual findings made by the board
> and other evidence in the record clearly demonstrate that
> alcoholism played *a primary role* in plaintiff's claimed injury.
> [*Ante,* p 144. Emphasis added.]

Later in the opinion, the majority states:

> Where a personal addiction plays a *significant·role* in a
> claimed mental or emotional injury, a finding that such an
> injury is work related should be precluded. [*Ante,* p 147.
> Emphasis added.]

The majority concludes with the following summation:

> In the present case, the WCAB found that plaintiff's disability
> resulted from emotional problems *and* alcoholism. Because the
> plaintiff's alcoholism was a *significant factor* in the board's
> decision that the plaintiff was disabled, we vacate the Court of
> Appeals decision and remand to the board to determine
> whether the plaintiff suffered a disabling personal injury that is

pensation cannot properly be denied because
Pierce's alcoholism played a "significant role."[12]

> When employment and personal risks concur to
> produce injury, the injury arises out of the employ-
> ment, since *the employment need not be the pri-
> mary cause,* but need only contribute to the injury.
> [1 Larson, Workmen's Compensation, § 7.00, p 3-
> 12. Emphasis added.]

It is not necessary that a worker's employment
be the proximate cause, the sole cause, or in any
way the *cause* of his or her disability. It is enough
that the employment *contribute* to the disability
or *aggravate* a preëxisting condition. Furthermore,
it is not necessary that the work be unusually
strenuous, or that it would have resulted in dis-
ability in a healthy individual. The disability is
compensable if the injury was severe enough or
the work strenuous enough to cause a given
worker to become disabled.

A disability is compensable if either a single
event at work or the repeated stress of the work
combines with other causes to contribute to a

---

*separate and apart* from his alcoholism. If there is insufficient
evidence of an *independent* disabling personal injury, plaintiff
has failed to carry his burden of proof, and compensation
should therefore be denied. [*Ante,* p 148. Emphasis in original
and emphasis added.]

The word "primary" generally means either first in time or impor-
tance. See *The Random House Dictionary of the English Language:
Second Unabridged Edition,* p 1537; *Webster's Third New Inter-
national Dictionary: Unabridged Edition,* p 2116. The word "signifi-
cant" generally does not mean first in time or importance.

In remanding for a determination whether Pierce suffered an
"independent" disabling personal injury "separate and apart" from
his alcoholism, the majority indicates that it is not using the word
"primary" to convey the meaning first in time or importance, but
rather to mean essentially the same as "significant." I so conclude
because, if the majority means first in time or importance, it might
not be possible on remand to determine that Pierce suffered an
"independent" disabling personal injury "separate and apart" from
his alcoholism.

[12] *Ante,* p 147.

disability or aggravates a preëxisting condition.
[Welch, Worker's Compensation in Michigan: Law
& Practice, § 7.3, pp 7-3 through 7-4. Emphasis in
original. Citations omitted.]

Adherence to the rule of law should constrain
the majority to observe these principles without
regard to whether the ordinary disease of life is
cardiovascular or mental, or is aggravated by over-
eating or overdrinking, as long as the requisite
work connection, stress in this case, is established.

It should not be necessary to explain to a profes-
sional audience the rationale for an established
rule of law that pervades the civil and criminal
jurisprudence.[13] The trier of fact, here the WCAB,
found that the stress of work at General Motors
aggravated Pierce's disease of alcoholism and com-
bined with his mental disorder to produce an
injury that disabled him from continuing to work.

C

To be sure, an alcoholic can slow or arrest the
progress of the disease of alcoholism by reducing
or eliminating the consumption of alcohol.

Physicians and the media repeatedly advise
against smoking, to eat wisely, and exercise regu-
larly. Some follow this advice. Many do not. It has
never been thought that in assessing whether a
worker can recover benefits for a disabling disease
the WCAB should decide whether the worker "suf-
fered a disabling personal injury separate and
apart" from and "independently" of his smoking,
gluttony, or failure to exercise.

Also noteworthy, as set forth in the majority

---

[13] A person, sober or intoxicated, unlearned as well as learned in
the law, is subject to criminal responsibility for the unintended
consequences suffered by an eggshell skull victim if the trier of fact
finds an injury was intended or recklessly or negligently inflicted.

opinion,[14] is that a person addicted to alcohol may have no more ability to stop drinking than a person addicted to smoking, excessive eating, and physical inactivity, may be able, when subjected to job stress, to stop smoking, overeating, or a pattern of physical inactivity.

### D

There is indeed a moral hazard where the consumption of alcoholic beverages is involved.[15] It is, nevertheless, beyond the province of this Court to seek to discourage the award of compensation by the WCAB for disabilities resulting from a mental disorder linked to alcoholism where the WCAB has found that the alcoholism was aggravated by the stress of work. The well-established rule of law regarding causation should guide the decision in the instant case, although the use of alcoholic beverages is involved:

> Some people are outraged that Michigan law permits recovery when the employment did nothing more than aggravate a preëxisting condition. It would be extremely unusual, however, if the law did not do so. All first-year law students are

---

[14] *Ante,* pp 144-145, n 12, where it is stated:

"Once the alcoholic begins to drink, he may be no more able to control the compulsion to continue drinking than the tuberculosis patient can voluntarily control his coughing. [Hammond, ed, *Almost All You Ever Wanted to Know\* About Alcohol \*But Didn't Know Who to Ask* (Michigan: Alcohol Research Information Service, vol 11, no 2, 1991), p 92.]"

[15] The majority views alcoholism primarily as a behavioral or motivational disorder. *Ante,* pp 144-146. It ignores evidence and professional opinions that alcoholism is also caused by hereditary or environmental factors. It is beyond the province of this Court to seek to impose its view of the correct resolution of the controversy whether alcoholism may be caused by hereditary or environmental factors except possibly at such time as there is overwhelming scientific evidence tending to support one view in preference to another.

taught that a tortfeasor "takes his victim as he finds him," and are given the example of "the man with the eggshell skull." The principle is that if you hit a person on the head and a cracked skull results, you are responsible for the consequences, even if the skull was weak to begin with and you gave only a slight blow as a joke.

If private citizens are expected to be responsible to the victims of their negligence, even when a resulting injury is largely influenced by a preëxisting weakness in the victim, there is no reason employers should escape liability to their workers under the same circumstances. [Welch, *supra,* p 7-4.]

Under the majority's logic, a person who works in a dusty factory and who smokes to relieve stress caused by work might or would be unable to recover workers' compensation benefits for lung damage.

E

The majority states that "[b]ecause there is *no indication that the Legislature intended* to include alcoholism as a chapter three personal injury or a preëxisting condition that is aggravated, accelerated, or combined with conditions of employment resulting in disability or death, and because there exists *persuasive evidence to the contrary, we adhere* to the view that alcoholism is not a 'personal injury' that arises out of and in the course of employment for purposes of a workers' compensation disability."[16]

The workers' compensation act does not define a chapter three personal injury, and thus does not identify specific injuries. Concern regarding compensation of "[m]ental disabilities and conditions

---

[16] *Ante,* pp 147-148. (Emphasis added.)

of the aging process," including "heart and cardio-vascular conditions," led to a 1980 amendment of the act to provide that such disabilities and conditions "shall be compensable if contributed to or aggravated or accelerated by the employment in a *significant* manner."[17] (Emphasis added.) Alcoholism is not mentioned. The failure to mention or exclude alcoholism, when recently enacting the higher "significant manner" standard respecting compensation for "[m]ental disabilities and conditions of the aging process" is, I think, an "indication" that the Legislature did not intend to exclude alcoholism as a "preëxisting condition."

The majority does not identify the "persuasive evidence to the contrary" of legislative intent not to "include alcoholism." The majority simply asserts, without citation or reference to any authority, that there is "persuasive evidence to the contrary."[18] Courts in other states, construing essentially the same workers' compensation provisions, have concluded that workers can recover benefits when the stress of work aggravates to the point of disability a tendency to alcoholism. See part III.

The statement, "*we adhere* to the view that alcoholism is not a 'personal injury'" suggests that this Court has previously so ruled.[19] The Court

---

[17] Mental disabilities and conditions of the aging process, including but not limited to heart and cardiovascular conditions, shall be compensable if contributed to or aggravated or accelerated by the employment in a significant manner. [MCL 418.301(2); MSA 17.237(301)(2).]

In *Hurd v Ford Motor Co*, 423 Mich 531, 534-535; 377 NW2d 300 (1985), this Court decided that 1980 PA 357, providing that mental disabilities are to be compensable if contributed to or aggravated or accelerated by the employment in a "significant manner" (MCL 418.301[2]; MSA 17.237[301][2]), applies to personal injuries that occurred on or after January 1, 1982. Pierce's injury occurred before that date.

[18] *Ante*, pp 147-148.

[19] *Ante*, p 148. (Emphasis added.)

cites no such precedent, and there is none. The "we" possibly refers to the views stated by some of the justices in their separate opinions in *Gacioch v Stroh Brewery Co,* 426 Mich 612; 396 NW2d 1 (1986). Those separate statements do not support the assertion that "we"—the Court as a court—has heretofore ruled that alcoholism is not a personal injury, and that the Court is simply "adhering" to that view.

### F

In *Gacioch,* this Court analyzed the plaintiff's claims of disability as a result of alcoholism under chapter four concerning occupational disease.[20] Pierce claimed personal injury under chapter three; he does not claim that his disability is the result of an occupational disease.

As the majority states, an award under chapter three is appropriate when the claimant has shown that he suffered a personal injury arising out of and in the course of his employment.[21] Compensation may be awarded for disabilities resulting from ordinary diseases of life if the claimant can show that his employment aggravated, accelerated, or combined with a preëxisting condition to produce a personal injury.

The majority's ipse dixit rejects the application of chapter three personal injury analysis "to cover diseases of addiction."[22] In so doing, it erects its "prejudices into legal principles." *New State Ice Co v Liebmann,* 285 US 262, 311; 52 S Ct 371; 76 L Ed 747 (1932) (Brandeis, J., dissenting).

The WCAB's award of compensation to Pierce

---

[20] In *Gacioch,* the plaintiff was a brewery worker who contended that the availability of free beer on the job led to his alcoholism.

[21] *Ante,* p 144.

[22] *Id.*

under chapter three should be affirmed because the WCAB found that work stress aggravated his alcoholism in combination with his emotional disorders.

### I

The issue presented is whether there is *any* evidence[23] to support the findings of the WCAB that Pierce has emotional problems connected to his drinking problems, that his drinking problem was aggravated by his work at General Motors, and that the emotional and drinking problems together disabled him from working. And, if so, whether those findings support, as a question of law, the award of benefits for a disabling mental disorder.

I would affirm the decisions of the Court of Appeals and the WCAB because there was evidence that supports the findings of the WCAB, and because those findings, as a matter of law, support an award of benefits for the injury found by the WCAB to have disabled Pierce from working.

The majority ignores the constitutional imperative[24] that "[f]indings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law."[25] The statute does not "otherwise provide," but rather reaffirms the principle embedded in the constitution.[26]

[23] *Scroggins v Corning Glass Co,* 382 Mich 628; 172 NW2d 367 (1969).

[24] The majority acknowledges that in reviewing the findings of the WCAB, the judicial role is to "decide whether there is *any* competent evidence to support the findings of fact made by the board" (*ante,* p 143, n 8; emphasis added), but does not observe this limitation on the judicial function in deciding this case.

[25] Const 1963, art 6, § 28.

[26] The findings of fact made by the board acting within its powers, in the absence of fraud, shall be conclusive. The court

A

The majority remands the case to the WCAB stating—as a matter of law—that the "WCAB erroneously included the plaintiff's personal addiction to alcohol as a *variable* in its decision to award disability benefits,"[27] that "alcoholism is a progressive disease, . . . aggravation of which is caused by the alcohol itself rather than by employment"[28] and that "there is no indication that the Legislature intended to include alcoholism as a chapter three personal injury or a preëxisting condition that is aggravated, accelerated, or combined with conditions of employment resulting in disability or death . . . ."[29] The majority adds: "Alcoholism is a progressive disease. The compulsion and the consumption will accelerate until it is interrupted."[30]

The findings of the WCAB, fairly read, reject the claim that Pierce sought to recover for the natural "progression," whatever that may be, of his alcoholism, an "ordinary disease of life" that, in itself, is not compensable:[31]

> Defendant [General Motors] argues that plaintiff's [Pierce's] chronic alcoholism is an ordinary disease of life and not compensable . . . . From the testimony of Dr. Bengisu that *work stresses* were a *significant factor* in plaintiff's anxiety and *drinking problem and contributed to his disability,* I find that plaintiff has established a work-related nexus. . . . [P]laintiff has established

---

of appeals and the supreme court shall have power to review questions of law involved in any final order of the board. [MCL 418.861; MSA 17.237(861).]

[27] *Ante,* p 139. (Emphasis added.)
[28] *Id.,* p 146.
[29] *Id.,* p 147.
[30] *Id.,* p 144.
[31] MCL 418.401(2)(b); MSA 17.237(401)(2)(b).

by a preponderance of the evidence from his treating psychiatrist that his *drinking was aggravated by his work.* . . .

We have found an emotional component to plaintiff's disability. At the same time, we recognize that his emotional difficulties are also linked to his drinking problem. We believe plaintiff that he was upset and stressed by his work for defendant. We believe him that he was transferred out of seniority more . than once and became very upset. We so find.

. . . [W]e *have found an emotional component in plaintiff's diagnosed emotional and alcoholic condition.*

. . . [B]ased upon the testimony of Drs. Lian and Bengisu, plaintiff is totally disabled. We likewise find that the medical evidence meets the preponderance standard . . . .

. . . We find plaintiff's testimony to be vague as to precise dates; however, plaintiff clearly testified to *job transfers which caused him emotional upset* . . . . [W]e find that plaintiff has established *work incidents that triggered mental or emotional disequilibrium and were personal injuries.* . . . [Emphasis added.]

Those findings include findings of an emotional component to Pierce's disability linked to his drinking problem, that work stress was a "significant" factor in Pierce's anxiety and drinking problem and contributed to his disability, that his drinking "was aggravated by his work," and thus implicitly a finding that the disabling personal injury found by the wcab was not simply the manifestation of an inexorable "progression" of Pierce's alcoholism.

### B

The majority speaks of how "[a]lcoholism is a progressive disease" as if the progressive nature of

alcoholism is a well-defined concept.[32] Some alcoholics die from drinking, some drink continuously at the same level, some reduce to social drinking, and some become abstinent.[33]

The medical sources relied on by the majority do not support its conclusion that Pierce was doomed to become disabled because of the "progressive" nature of his alcoholism without regard to the stress of work. The majority cites authorities stating that " '[o]nce the alcoholic begins to drink, he *may* be no more able to control the compulsion to continue drinking than the tuberculosis patient can voluntarily control his coughing' " and that alcoholism is "*often* progressive."[34] (Emphasis added.) None of these sources indicate that alcoholism is always progressive and that alcoholism necessarily degenerates into disability even if the alcoholic is not subjected to the stress of work. Yet it is upon these statements that the majority appears to base its conclusion that Pierce's alcoholism was "progressive."[35]

The WCAB found a personal injury that was not simply the result of the "progression" of Pierce's alcoholism, and thus found a personal injury independent of the "progression" of his alcoholism. The WCAB reviewed the actual work events related by Pierce and found that those work events "triggered mental or emotional disequilibrium and were personal injuries . . . ." The majority, constitutionally barred from fact finding, has nevertheless found that Pierce would have continued drinking even if he had not experienced work stress.

That alcoholics can always give a reason why

---

[32] *Ante,* p 144.

[33] Vaillant, *The Natural History of Alcoholism* (Cambridge, Mass: Harvard Univ Press, 1983), p 5.

[34] *Ante,* pp 144-145, n 12.

[35] *Id.,* pp 144-146.

they drink[36] should not control the outcome of this case. There was a specific finding of fact by the WCAB that Pierce was not just imagining that work stress caused his problems—Pierce was not just making work a scapegoat for his drinking. According to the WCAB, work stress was *the* problem, or at least *a* problem, causing Pierce's disability.[37]

C

The majority acknowledges that "[t]he deposition testimony of the medical experts produced by both defendant and plaintiff demonstrates the ambiguity of plaintiff's disability. From their testimony, it is not evident which disorder precipitated the other, or if either could have existed independently."[38]

---

[36] *Id.,* p 145, ns 14 and 16.

[37] The employment need not be the sole cause; it is enough if it contributes to the injury. [*Kostamo v Marquette Iron Co,* 405 Mich 105, 126; 274 NW2d 411 (1979).]

[38] *Ante,* p 143.

There is an ongoing debate among professionals concerning the relationship between alcoholism and mental disorders. Alcohol, a depressant, can induce psychotic, depressive, and impulsive states. Alcoholism and affective disorders (psychiatric illnesses whose central aspect is a disturbance of mood—including depression) are separate illnesses, but can result in similar depressive symptoms.

Chronic alcoholism may result in a depressive syndrome. "Efforts to distinguish between primary depressions and depression secondary to alcohol abuse solely on the basis of symptoms have not been consistently successful enough to inform clinical decision making. . . . Since affective disorders are common, a small percentage of alcoholics who present depressed will have an independent affective disorder." Brown, "Alcohol Problems in Patients with other Psychiatric Disorders," in *The Alcoholic Patient* (New York: Gardner Press, 1992), pp 131, 139.

The coincidence of a history of alcohol abuse and psychiatric symptoms in a person thus present problems in accurately assessing and treating the person. These difficulties include diagnostic confusion between certain alcohol-induced states and other psychiatric disorders that result in similar disturbances in thought, mood, and behavior. *Id.,* p 131.

The majority does not explain how the WCAB, on remand, should separate the alcoholism from the emotional disorder, given the WCAB's finding that the two are intertwined "such that we cannot extract one from the other."

II

The majority cites no Michigan authority in support of its pronouncement.[39] It observes that Florida and Georgia have reached the result it concludes is sound public policy. As indicated by the majority, the statutes in those two states were amended to specifically exclude recovery for work claims in which alcoholism is the claimed disability.[40]

This Court is bound to enforce the workers' compensation act as enacted by the Michigan Legislature, and may not graft onto the act the explicit prohibitions and policy choices set forth in statutes enacted in other jurisdictions. Unless the Michigan Legislature amends the act to exclude recovery for acceleration or aggravation of the ordinary disease of alcoholism, this Court should sustain an award of compensation where alcohol-

---

Despite this acknowledgment, the majority goes on to conclude that "[a]lthough ambiguous with regard to the exact etiology of plaintiff's disability, the factual findings made by the board and other evidence in the record clearly demonstrate that alcoholism played a primary role in plaintiff's claimed injury." *Ante,* p 144.

[39] Because there is no indication that the Legislature intended to include alcoholism as a chapter three personal injury or a preëxisting condition that is aggravated, accelerated, or combined with conditions of employment resulting in disability or death, and because there exists persuasive evidence to the contrary, we adhere to the view that alcoholism is not a "personal injury" that arises out of and in the course of employment for purposes of a workers' compensation disability. [*Ante,* pp 147-148.]

[40] Fla Stat Ann 440.02(1); Ga Code Ann 34-9-1(4). See ns 52 and 53 and accompanying text for the language of the statutes.

ism is a factor as it routinely sustains awards compensating for the aggravation or acceleration of ordinary diseases of life thought to be less blameworthy than alcoholism.

After stating that "[o]rdinary diseases of life to which the public is generally exposed outside of the employment shall not be compensable" (the part of the statute quoted by the majority),[41] the statute provides (in the part omitted by the majority):

> Mental disabilities and conditions of the aging process, including but not limited to heart and cardiovascular conditions, shall be compensable if contributed to or aggravated or accelerated by the employment in a significant manner. [MCL 418.401(2)(b); MSA 17.237(401)(2)(b).]

The workers' compensation definition of "personal injury" enumerates exceptions to coverage—different rules for mental disabilities, diseases of the aging process, heart and cardiovascular conditions. It enumerates no exception for alcoholism.

The majority thus states that, because the Legislature did not specifically mention alcoholism as being *included,* it must be excluded from coverage. This conclusion turns logic and traditional rules of statutory construction on their heads. "The enumeration of exclusions from the operation of a statute indicates that the statute should apply to all cases not specifically excluded."[42]

While expressio unius can be overcome "by a strong indication of contrary legislative intent or policy,"[43] the majority points to nothing indicative of legislative intent to exclude disabilities involv-

---

[41] *Ante,* p 139, n 1.

[42] 2A Singer, Sutherland Statutory Construction (5th ed), § 47.23, p 217.

[43] *Id.*

ing alcoholism from coverage and no policy other than their essentially personal views that alcoholism is primarily a motivational disorder.

### III

Courts in other jurisdictions have addressed the question whether a claimant can recover workers' compensation benefits when alcoholism played a direct role in the claimed disability.[44]

Most recently, a New York appellate court, applying a substantial evidence standard of review, affirmed an award of benefits for mental disability involving alcoholism. The worker in *Beames v Warren Co Sheriff's Dep't,* 190 AD2d 877; 593 NYS2d 127 (1993), was a correction officer for a sheriff's department. The worker's son, then sixteen years old, was incarcerated in the facility in which the worker was employed.

The worker was apparently subjected to constant harassing and taunting about his son's incarceration, both from inmates and fellow correction officers. His fears about the future imprisonment of his son, as well as the taunting, caused considerable stress. The worker had a physical confrontation with an inmate who allegedly threatened to sodomize the claimant's son. Following this incident, the worker was fired.

Although the worker had longstanding problems with alcohol abuse, depression, and marital difficulties, these were apparently under control until the imprisonment of his son.[45]

---

[44] Other cases discuss whether a worker can recover the costs of alcohol-abuse treatment when the worker alleges he turned to drink to ease the pain of a previously suffered compensable physical injury. See n 49 ff and accompanying text.

[45] After he was discharged, the worker sought psychological counseling and filed for workers' compensation benefits. A hearing referee found a causal relationship between work stress and the worker's

The New York court held that there was substantial evidence to support the finding that the worker's disability was causally related to an accident arising out of and in the course of employment.[46]

An Oregon appellate court after de novo review affirmed awards of compensation for injuries in which alcoholism and mental disorders combined. The worker in *Adsitt v Clairmont Water Dist,* 79 Or App 1; 717 P2d 1231 (1986), was a billing clerk in a three-person office who felt harassed by what she considered to be a continuous barrage of unfair criticism about her job performance. She was found to have a long history of alcohol abuse accompanied or caused by depression and low self-esteem, superimposed upon an hysterical personality. The worker claimed that work stress aggravated her mental disorders and alcoholism.

The court found that while work stress did not cause her mental illness and alcoholism, "an exacerbation of an underlying condition caused by work activities is itself a compensable occupational disease if it reflects a worsening of the condition and involves an increase in pain which produces disability or requires medical services." *Id.,* p 6. The court further found that work conditions were the major contributing cause of the worker's physical condition. It added that it "does not matter

alcoholism and depression. The appeal board modified that determination and found that the worker's altercation with the inmate, superimposed upon his preëxisting condition (the alcohol abuse, depression, and marital problems), resulted in an adjustment disorder with anxiety and depression, thereby disabling him.

[46] One treating doctor testified that pressure from his son's incarceration provided the final stress from which the worker could not recover, given his alcoholism and tendency to depression. Another treating doctor testified that being his son's jailer had contributed to the worker's depression and drinking. This expert noted that before the situation with his son, the worker had managed to function adequately, despite his other problems.

who is responsible for the work conditions or whether claimant's perceptions of those conditions is the same as an objective outside observer's. The conditions could produce stress and did produce a worsening of claimant's condition." *Id.*

A similar result was reached by the Oregon court in *Globe Machine v Yock,* 79 Or App 9; 717 P2d 1235 (1986), decided contemporaneously with *Adsitt.* The court affirmed an award finding that the worker's disabling psychological breakdown and alcohol abuse were the result of stress experienced on the job.

The worker was the president of a Globe Machine subsidiary that had filed for bankruptcy. He had presided over the liquidation of the company, including laying off employees and dealing with creditors. The worker had been a heavy drinker before his job at Globe Machine, but had always been able to work. He began to drink even more heavily after several months on the job.

The Oregon court was convinced by the evidence that work caused a worsening of the worker's condition. "If his alcohol abuse is a symptom of underlying depression and anxiety, the work stress produced or exacerbated those problems. If alcoholism is in itself a disease, he lost control of the disease because of work stress." *Id.,* p 15. The court further concluded that "[c]laimant's loss of control over his alcoholism together with his depression and anxiety constituted a compensable worsening of his underlying disorder." *Id.,* pp 15-16.

A Louisiana appellate court, in *Proyer v Monsanto Co,* 606 So 2d 1307 (La App, 1992), affirmed an award of compensation where work stress, alcoholism, and mental injuries were interrelated. The worker was a production technician operating a control board processing the mixing and manu-

facturing of chemicals. Mishandling could lead to spontaneous reactions called fusions. A number of fusions occurred while the worker was at the controls, for which he was blamed. One evening he received a telephone call from a co-worker informing him that he was being blamed for a fusion that did not occur on his watch.

Feeling stressed by his work situation, the worker began to envision a plan to kill his boss. He suffered a severe breakdown or psychotic episode upon being sent home,[47] becoming delusional, suicidal, and homicidal. The worker was admitted to a substance abuse clinic five days later. Monsanto appealed a finding of total and permanent disability due to mental stress from work.

The worker's expert witness testified that the worker was suffering from depression, alcohol abuse, a borderline personality disorder, and paranoia, and that alcohol aggravated the situation, but was not the primary problem. Rather, work stress was primary. Monsanto's expert witness testified that the worker's problem was chiefly the result of alcoholic hallucinosis, although he acknowledged that the worker was under work stress. The Louisiana court affirmed an award of benefits under a standard of review that permitted reversal only for manifest error, and declined to set aside the award because alcohol played a role in the injury.

The majority's citation of *Darnell v North Dakota Workers Compensation Bureau,* 450 NW2d 721, 726 (ND, 1990),[48] is misplaced. There, the court wrote that "we determine only whether a reasoning mind could have reasonably determined that the agency's factual conclusions were sup-

---

[47] A few days after the telephone call, the worker was sent home after being criticized for not following safety procedures.

[48] *Ante,* p 145, n 13.

ported by the weight of the evidence." *Id.,* p 723. The court thus was bound to affirm the denial of benefits to the worker because it found the decision denying benefits to be reasonable on the factual record.

The standard applied in *Darnell* is similar to the standard that limits this Court's powers of judicial review, and which requires that this Court affirm WCAB findings of fact unless there is no evidentiary support.

In the instant case, the WCAB found from the evidence that Pierce's employment activities *were not* an excuse for voluntarily drinking. Rather, work stress aggravated Pierce's alcoholism and combined with or caused emotional disorders, leading to his disability.

A related group of cases from other jurisdictions involves claims that the worker drank or used drugs to ease the pain of compensable physical injury. The workers sought to recover the costs of substance abuse treatment.[49] None of these cases adopts a blanket rule denying benefits for alcohol treatment. Some deny benefits because statutes mandate a denial, while at least one court, for public policy reasons, has refused to award benefits for treatment for addiction to an *illegal* drug.

In *Hansen v Weyerhaeuser,* 89 Or App 349; 749 P2d 1183 (1988), the claimant had injured his knee

---

[49] In *Scroggins v Corning Glass Co,* 382 Mich 628; 172 NW2d 367 (1969), the worker was discharged for intoxication. Normally, being fired for voluntary intoxication would bar a worker from recovering workers' compensation benefits. The worker claimed, however, that he drank to ease the pain of a previous work-related back injury. The Court held that the voluntary intoxication did not break the causal connection between the injury and his disability from work and that Scroggins qualified for benefits. This case does not fit into the group being described in this section because it appears from the case that Scroggins was only seeking compensation for the back injury, not for his secondary alcoholism.

in June, 1981, was awarded permanent partial disability, and returned to work in a different capacity. He subsequently injured his back in May, 1983. Two weeks into his second stay at a pain center, in November, 1984, it was discovered that the worker was an alcoholic. The employer denied responsibility for the cost of an alcohol rehabilitation program as well as the second stay at the pain center.

The worker contended that the pain of his injuries caused him to drink heavily and that, as a result, he became an alcoholic needing treatment. The Oregon court, after review de novo, affirmed the denial of benefits. The court, relying in part on *Globe Machine,* wrote that "[t]reatment for the alcoholism would be compensable if the injury caused it to become symptomatic, or caused a preëxisting psychological condition to become symptomatic in the form of alcoholism." *Id.,* p 352. The worker proved neither of these conditions.[50]

The Nebraska Supreme Court in *Elliott v Midlands Animal Products,* 229 Neb 823; 428 NW2d 920 (1988), reviewed an award of benefits to a worker who sought payment for alcohol abuse treatment. He contended that he drank to ease the pain of a compensable hand injury.[51] The court affirmed an award of benefits for treatment occurring after a 1979 hand injury because there was testimony that he drank heavily after the injury, when before he only drank socially. The court,

---

[50] In another Oregon case, *Sullivan v Banister Pipeline American,* 91 Or App 493; 756 P2d 54 (1988), the worker sought review of a determination that his depression and alcohol abuse treatment were not compensable. He alleged that his alcoholism arose out of a previously compensated knee injury and psychological problems that arose from the knee injury. After de novo review, the court held, without discussion, that the evidence did not establish a relationship between the worker's alcoholism and his compensable conditions.

[51] The Nebraska Supreme Court applied a clearly erroneous standard of review.

however, denied payment for alcohol treatment occurring after a 1982 hand injury, because there was no testimony that the worker's alcoholism had been aggravated by the 1982 injury.

Benefits have been denied when statutes explicitly so require. In *Milmir Construction v Smith,* 582 So 2d 52 (Fla App, 1991), the worker had an alcohol and drug abuse problem subsequent to suffering a work-related back injury. The Florida statute specifically excluded from the definition of injury arising out of employment "disability or death due to the accidental acceleration or aggravation of a venereal disease or of a disease due to the habitual use of alcohol or . . . narcotic drug . . . ."[52] A Georgia statute provides that "alcoholism or disabilities attributable thereto shall not be deemed to be 'injury' or 'personal injury' by accident arising out of and in the course of the employment."[53]

One court has denied benefits for drug abuse treatment for public policy reasons. In *Dumas v Hartford Ins Co,* 583 So 2d 31 (La App, 1991), the worker claimed that his attempts to relieve the pain of a compensable back injury caused him to

[52] Fla Stat Ann 440.02(1).

[53] Ga Code Ann 34-9-1(4); see also *Dan River, Inc v Shinall,* 186 Ga App 572; 367 SE2d 846 (1988).

In *Wagoner v Douglas Battery Mfg Co,* 365 SE2d 298 (NC, 1988), the North Carolina Controlled Substances Act prohibited compensation if the injury or death was proximately caused by being under the influence of a controlled substance. The worker had a psychotic breakdown approximately six months after having his hand mangled in a conveyer belt, for which he was compensated. The worker sought treatment for his psychiatric care. The court affirmed the finding that there was no work-place nexus to the hand injury. The worker had a history of drug abuse, including consumption of PCP and LSD, hallucinogens noted for producing "severe and bizarre reactions as well as a loss of reality." *Id.,* p 299 (Reporter's syllabus). The court concluded that even though the hand injury was a contributing factor to the psychosis, worker's "willful substance abuse was an intervening cause which prohibits an award of benefits." *Id.,* p 301.

turn to street drugs (cocaine) when medical atten-
tion failed to provide relief. The court ruled:

> [T]he defendants cannot be held liable for pay-
> ment of the costs of plaintiff's drug abuse therapy,
> even if the cocaine use was precipitated by the
> work-related accident. As a matter of public policy,
> the plaintiff's decision to forego legal medical
> treatment in preference for the use of illegal drugs
> cannot be sanctioned. Other avenues for relieving
> the pain of the back injury were available. [*Id.*, p
> 35.]

Denying benefits as a matter of public policy for
a disability resulting from the illegal use of drugs
is clearly different than denying benefits for dis-
ability resulting from the legal, albeit unwise,
consumption of alcohol.[54]

The largest group of cases in which courts have
considered alcoholism is that in which alcohol or
drug abuse was claimed to have been or was found
to be an intervening or actual cause of the disabil-
ity for which the claimant sought workers' com-
pensation benefits. In those cases, workers claimed
that work injury caused disabilities unrelated to
alcohol or drug use. The issue discussed by the
courts was whether the board correctly found that
the use of alcohol or drugs was an intervening
cause in the nexus between the work-place injury
and the disability for which benefits were sought.
Typically, the appellate courts affirmed findings of
fact on a narrow standard of appellate review.[55]

---

[54] The state licenses those who distribute and purvey alcohol and,
indeed, enriches its coffers with alcohol taxes and the profit it turns
as the sole legal distributor of alcoholic beverages.

[55] See, for example, *Estate of Mitchum v Triple S Trucking,* 113 NM
85; 823 P2d 327 (1991) (the worker's intoxication was the cause of
his fall, therefore he could not recover benefits for injuries suffered);
*Rodge v United Van Bus Delivery,* 330 NW2d 715 (Minn, 1983)
(the worker could not continue to draw disability because only

At the heart of the majority's reasoning is its belief that Pierce should not be compensated because alcoholism is a self-inflicted disorder. Alcoholism, according to the majority, is an addictive disorder for which the only person at fault is the alcoholic.

As the cases from other jurisdictions demonstrate, this is not a position that has been generally adopted. Further, the federal courts have awarded social security disability and supplementary income benefits in cases in which alcoholism played a role in claimant's disability.[56]

At least two jurisdictions have considered a

---

his alcoholism, not his back injury, was preventing his return to work); *Salter v CECO Corp,* 596 So 2d 927 (Ala Civ App, 1991) (disability benefits were denied for lack of a finding of causation between an on-the-job back injury and the disability; the court sustained a finding that the worker's drug addiction was what was truly disabling him and that he was exaggerating his pain to his doctors to obtain narcotics); *Henson v Club Products,* 22 Ark App 136; 736 SW2d 290 (1987) (the worker appealed a denial of benefits for psychiatric treatment for psychological disorders that he claimed constituted a preëxisting condition aggravated by his compensable burn injury; the court sustained a denial of benefits on the strength of findings that the plaintiff's condition was no different after the accident than before [he had been hospitalized in a mental institution before the accident] and that it was apparent that alcoholism was a continuing factor in the claimant's progressing emotional disorders); *Westinghouse Electric Corp v Workmen's Compensation Appeal Bd,* 489 Pa 485; 414 A2d 625 (1980) (an award of benefits was reversed for lack of a work nexus; the worker had died after he choked on his own vomit; he had been socially drinking with co-workers while away on business; the court held that the worker's voluntary ingestion of alcohol and multiple depressant drugs was not related to the course of employment); *Sade v Troublefield,* 649 P2d 538 (Okla, 1982) (denial of benefits to the worker's decedent was sustained; the decedent had injured his arms in an accident; he took a bottle of pain killing drugs after consuming a fifth of whiskey; the trier of fact could reasonably conclude that the death was the consequence of a separate and distinct volitional act of the decedent and not a legitimate consequence flowing from the compensable injury); *White v Ford, Bacon & Davis Texas, Inc,* 256 Mont 9; 843 P2d 787 (1992) (denial of additional benefits claimed for back injury was sustained because it was the worker's drug and alcohol abuse that limited his earning capacity).

[56] See, e.g., *Purter v Heckler,* 771 F2d 682 (CA 3, 1985); *McShea v Schweiker,* 700 F2d 117 (CA 3, 1983); *Ferguson v Schweiker,* 641 F2d 243 (CA 5, 1981); *Boyd v Bowen,* 710 F Supp 1046 (ED Pa, 1989).

worker's alcoholism in assessing the *amount* of disability caused by a compensable, physical work injury.[57]

I would affirm the decision of the Court of Appeals and the award of the WCAB.

---

[57] In *Roberts v Asgrow Seed Co,* 116 Idaho 209; 775 P2d 101 (1989), a referee found permanent physical impairment of five percent of the whole man, caused by the worker's on-the-job back injury. The referee also found permanent partial disability of fifty-eight percent when other nonmedical factors, including the worker's age, limited formal education, limited work experience, physical appearance (missing teeth), and history of excessive alcohol consumption were considered.

The Idaho Supreme Court held that alcoholism was a pertinent nonmedical factor to be considered in assessing disability, rather than a preëxisting physical impairment for which the employer would not be liable. This was based on a finding that alcohol consumption did not hinder the worker's earning capacity before the accident and therefore could not be said to be analogous to a preëxisting physical impairment.

Similarly, in *City & Co of Denver v Industrial Comm,* 690 P2d 199 (Colo, 1984), the appeal board considered the worker's nonindustrial injuries including glaucoma, arthritis, asthma, obesity, and history of alcoholism in determining the extent of the permanent total disability from a back injury.