BOBBY WAGONER, EMPLOYEE, PLAINTIFF v. DOUGLAS BATTERY MANUFAC-
TURING COMPANY, EMPLOYER, AND HARTFORD INSURANCE COMPANY,
CARRIER, DEFENDANTS

No. 8710IC410

(Filed 1 March 1988)

**Master and Servant § 66— workers' compensation—mental illness after compen-
sable injury—substance abuse as cause**

    The evidence supported a determination by the Industrial Commission
that, although plaintiff's disabling hand injury was a contributing factor in his
disabling mental illness, his willful abuse of various controlled substances, in-
cluding marijuana, LSD, PCP, quaaludes and cocaine, was an intervening cause
which prohibits an award of benefits for his mental illness pursuant to
N.C.G.S. § 97-12(2).

APPEAL by plaintiff from Order of the North Carolina Indus-
trial Commission, entered 2 December 1986. Heard in the Court of
Appeals 28 October 1987.

This case appears before us for the second time on appeal.
From an order entered 30 April 1985 by the Full Commission
awarding benefits to the plaintiff, defendants appealed. On ap-
peal, this Court reversed and remanded the case to the Full Com-
mission, on the basis that the Commission erred by applying an
improper standard to the evidence. *See Wagoner v. Douglas Bat-
tery Mfg. Co.*, 80 N.C. App. 163, 341 S.E. 2d 120 (1986). On 2
December 1986, the Full Commission entered an opinion and
award denying plaintiff's claim, from which plaintiff now appeals.

Bobby Wagoner, plaintiff, began working for defendant
Douglas Battery Manufacturing Company in October of 1979. On
26 July 1980, plaintiff sustained a serious work-related, compen-

sable injury when he caught his left hand in a conveyor belt wheel, while reaching to retrieve some battery decals. His hand was badly mangled, and his left index finger was amputated as a result. Plaintiff was released from the hospital within several days, and returned to work on 8 September 1980. Defendants have paid compensation to the plaintiff for the period between 26 July 1980 and 8 September 1980, as well as for the 100% permanent disability to his finger.

After having returned to work, plaintiff began to develop a mental disorder exhibited by paranoia, withdrawal, and delusions. In December of 1980, plaintiff began to see a psychiatrist, Dr. Ali Jarrahi, who determined that plaintiff was on the verge of a psychotic breakdown.

As diagnosed, plaintiff, in fact, experienced a breakdown on or about 10 January 1981. On that date, he quit his job and drove around all night listening to imaginary voices. His behavior became even more bizarre on the morning of the following day when he woke his household at around 4:00 a.m., and explained to his family that voices had told him that he was a prophet.

On 12 January 1981, plaintiff was committed for psychiatric hospitalization at Forsyth Memorial Hospital and remained there until 25 February 1981. He was again committed on 5 March 1981, at John Umstead Hospital. Dr. Jarrahi diagnosed plaintiff as having an acute pyschosis, *drug-induced versus schizo affective.* He further determined that three factors were possible contributing causes of plaintiff's condition: (1) plaintiff's drug use, including an increasing frequency of use immediately prior to his psychiatric hospitalization, (2) the stress associated with the amputation, and (3) plaintiff's pre-morbid personality and possible increased susceptibility to mental illness due to genetic influences. The possibility of genetic influences was supported by past hospitalizations of both his mother and younger brother at John Umstead for treatment of mental illness.

Some evidence of plaintiff's history of controlled-substance abuse presented before the Commission includes: an admission by plaintiff that he had smoked marijuana since the eighth grade, and that during the months following the accident his usage increased to almost daily; further admission that he had used quaaludes both while in high school and as recently as October 1980;

another admission that he had used LSD on several occasions and as late as 31 December 1980; and yet another admission that he had used cocaine on several occasions after the accident, including 31 December 1980.

Other evidence concerning the interrelationship between plaintiff's substance abuse and his mental disorder, was in the form of testimony by Dr. Jarrahi. In his testimony, he acknowledged the significance of plaintiff's drug use and testified that PCP and LSD, both of which plaintiff admitted using shortly prior to his admission to the hospital, are hallucinogens and are noted for producing severe and bizarre reactions as well as a loss of reality.

Based upon this evidence, the Full Commission entered the opinion from which plaintiff now appeals, concluding that, plaintiff's mental illness was proximately caused by his use of controlled substances, and that he is not entitled to benefits under the Act.

*David B. Hough and Lawrence J. Fine, for plaintiff-appellant.*

*Petree Stockton & Robinson, by Robert J. Lawing and Jane C. Jackson, for defendants-appellees.*

JOHNSON, Judge.

Plaintiff presents eight issues for review, all which question whether the Commission's findings of fact were supported by competent evidence from the record, and whether its conclusions of law were supported by the findings of fact. In his questions presented, plaintiff has enunciated the two-prong standard of review we must follow on appeal from an opinion and award of the Industrial Commission. *Barham v. Food World*, 300 N.C. 329, 266 S.E. 2d 676 (1980); *Murray v. Biggerstaff*, 81 N.C. App. 377, 344 S.E. 2d 550 (1986).

Plaintiff primarily challenges the findings of fact concerning his drug usage, and contends that there is no evidence to support the finding that he has been using numerous controlled substances since he was in the eighth grade; the finding that he was successfully employed between 8 September 1980 and 12 January 1981 and consumed LSD, PCP, quaaludes, marijuana and cocaine recreationally during that time; nor the finding and ultimate con-

clusion of law that his willful use of controlled substances was an intervening cause of his mentally disabling condition.

We find that both the Commission's findings of fact and conclusions of law were amply supported by evidence from the record and, therefore, affirm the Commission's order and award in its entirety.

When evaluating an appeal from a final order of the Industrial Commission, this Court, when considering the evidence, determines only whether there is any substantive evidence in the record to support the Commission's findings. *Porterfield v. RPC Corp.*, 47 N.C. App. 140, 266 S.E. 2d 760 (1980). In order to disregard the findings, we must find that there is no competent evidence in the record to support them. *Carroll v. Burlington Industries*, 81 N.C. App. 384, 344 S.E. 2d 287 (1986); *Mayo v. City of Washington*, 51 N.C. App. 402, 276 S.E. 2d 747 (1981). Therefore, it follows that where there is any evidence to support the Commission's findings, we are bound to accept them, although some evidence may exist which would justify a different result. *Burlington Industries, supra.*

In evaluating the findings of fact concerning plaintiff's drug usage, we are met with a plethora of evidence from the record. On cross-examination, plaintiff made several admissions in response to questions about his drug use as follows:

Q: Mr. Wagoner, you've been taking drugs since the eighth grade, have you not? . . .

A: Taking drugs, not on no [sic] regular basis.

Q: Well, when you were admitted to the hospital in January 12, '81, and your attorney has introduced a copy of the discharge summary, didn't you tell 'em that you had been using numerous drugs since the eighth grade, including Quaalude[s], LSD, acid, uppers and downers, cocaine and marijuana?

A: I might have. I'm not totally sure.

Q: Well, you told 'em that you had been taking drugs orally, sniffing, is that correct?

A: Orally and sniffing. *Yes, I told them I had used drugs.*

. . .

Q: Well, do you have knowledge of telling 'em that you had taken Quaaludes?

A: Quaaludes?

Q: Yes.

A: *I—yes, I had told 'em I had taken some Quaaludes. . . .*

Q: You told them you had taken LSD, didn't you?

A: *Yes. Not on that morning though.*

Q: You told 'em you had taken acid?

A: Not on that morning.

Q: Well, at times previous?

A: Yes, sir.

Q: And uppers and downers?

A: Yes, sir.

Q: Cocaine?

A: Yes, sir.

Further cross-examination regarding plaintiff's drug usage appears as follows:

Q: Did you tell the hospital staff, including the doctors and nurses, that you had used PCP?

A: That I had used PCP?

Q: Yes.

A: They told me that I showed it in my bloodstream, and I told 'em I had no knowledge of using it.

. . .

Q: Referring again to the hospital record, Mr. Wagoner, I will ask you again, sir, if you didn't tell 'em that the last time you used LSD was just before Christmas in 1980?

A: No, sir, I don't think I told 'em that. I think I told 'em the last time I used it was after Christmas of '80, around January the 1st.

Q: So, the way that you recall it, you told 'em that you used LSD on January the 1st, 1981?

A: December the 31st or 30th. It was New Year's Eve.

Dr. Ali Jarrahi, plaintiff's treating psychiatrist and the only medical witness presented, testified to the following: that he first saw plaintiff on 16 December 1980; that he recommended hospitalization at that time, but plaintiff did not agree; that the significant factors associated with plaintiff's disabling psychosis were the "issue of the stress of the accident," plaintiff's pre-morbid personality, and the issue of plaintiff's drug use; that plaintiff's final diagnosis was "acute psychosis" which could have been either drug induced or schizo-affective; that plaintiff had a history of poly substance abuse; and that PCP and LSD both of which plaintiff admitted taking were hallucinogens which can result in hallucinations and in a loss of touch with reality.

Based upon this evidence the Commission found the facts heretofore noted to which plaintiff objected, and ultimately reached the conclusion of law that plaintiff was not entitled to compensation pursuant to G.S. 97-12(2). This provision states that "[n]o compensation shall be payable if the injury or death to the employee was proximately caused by: . . . (2) "[h]is being under the influence of any controlled substance listed in the North Carolina Controlled Substances Act, G.S. 90-86 *et seq.*, where such controlled substance was not by prescription by a practitioner."

The Commission further concluded that although plaintiff's hand injury was a contributing factor in his disabling psychosis, his willful substance abuse was an intervening cause which prohibits an award of benefits.

We hold, therefore, that the Commission's findings of fact were supported by evidence from the record, and its conclusions of law were supported by the findings. Although we are acutely aware of the policy favoring liberal treatment of employee claims under the Workers' Compensation Act, we have found no reason to disturb the order denying benefits to plaintiff.

Affirmed.

Judges WELLS and COZORT concur.