Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
Based upon all of the competent evidence adduced at the hearing before the Deputy Commissioner and from the record, the Full Commission makes the following
FINDINGS OF FACT
1. At the time of hearing, plaintiff was forty-five years old female who sustained an admittedly compensable injury by accident to her back in the course of her employment with defendant on October 20, 1988. The parties entered into a Form 21 Agreement on or about November 9, 1988, wherein they agreed that defendant would pay plaintiff temporary total disability benefits at a rate of $205.80 per week beginning November 3, 1988 and continuing for the necessary weeks. This agreement was approved by the Industrial Commission on December 16, 1988. Plaintiff's agreed average weekly wage was $308.70 at the time of the accident.
Thereafter, the parties entered into a Form 26 Agreement dated March 2, 1989, wherein the defendant agreed to pay plaintiff additional temporary total disability compensation at the above said rate beginning February 17, 1989, and continuing for the necessary weeks.
Thereafter, on or about January 30, 1990, the defendants filed a Form 24 motion to terminate the payment of benefits to plaintiff in that plaintiff had reached maximum medical improvement as of December 8, 1989. The Form 24 petition was approved on or about February 26, 1990. On or about January 30, 1990, the parties entered into a Form 26 Agreement wherein defendant agreed to pay plaintiff $205.80 per week for 75 weeks beginning December 8, 1989, representing payment for a 25% permanent partial disability rating that plaintiff had received in reference to her back injury.
Thereafter, the parties entered into a Form 26 Agreement on or about October 18, 1991, wherein the defendant agreed to pay to plaintiff temporary total disability benefits a the rate of $205.80 per week beginning February 15, 1991, and continuing for the necessary weeks. The plaintiff was still receiving benefits under this agreement at the time of this hearing, even though defendant had petitioned the Industrial Commission to be allowed to stop payments and the same being denied.
2. This matter came on for hearing to determine, (1) whether plaintiff had suffered a heart attack as a result of her injury to her back, (2) whether plaintiff's psychological problems are a result of her admittedly compensable injury, and (3) whether defendants were obligated to pay certain medical bills and for certain tests and treatment allegedly related to her back condition.
3. Dr. E. Bruce Elliston and Dr. Todd M. Chapman saw the plaintiff for her compensable back condition. When asked if plaintiff's heart attack of October 12, 1993 was related to the stresses and other complications she has had as a result of her back injury, each stated that it was their opinion that there was no relationship between plaintiff's heart attack and her back injury, or that they could not say that the back injury had any relationship to her heart attack. Plaintiff's heart attack did not result from the accidental injury or the complications associated with said injury.
4. Prior to her accidental injury, plaintiff had been receiving psychological counseling for what Yvonne Johnson-Gant had diagnosed as classic co-dependence in relationships.
5. Ms. Johnson-Gant first saw plaintiff on or about December 2, 1987, prior to her compensable injury, at which point plaintiff was complaining of dysthymia depression, and generalized anxiety, with panic attacks and "very poor self-esteem" resulting from "relationship conflict" involving separation from her alcoholic husband. Ms. Johnson-Gant noted that plaintiff repeatedly became involved in abusive relationships. A dysthymia depression — as distinct from a "major depression" — is "more in the mood and [affect] category than major depression" and "may not be debilitating" according to Ms. Johnson-Gant's testimony.
6. Plaintiff received counseling from Ms. Johnson-Gant from December 2, 1987 through March 18, 1988, at which time she was discharged with significantly reduced panic attacks and improved sense of self worth.
7. Plaintiff was next seen by Ms. Johnson-Gant on November 14, 1989, approximately one year and one month after the accidental injury, with her complaint being depression/anxiety relating to her off and on relationship with her abusive boyfriend. Ms. Johnson-Gant noted that the claimant wanted to "explore her pattern of continuing with this boyfriend and abandoning men who are considerate and kind to her." Plaintiff testified that she took out a warrant for assault against him in this period.
8. On a July 26, 1990 record entry, Ms. Johnson-Gant noted that plaintiff was making minimum progress in that plaintiff had sabotaged her own progress and married this "boyfriend" and had dropped out prematurely. Ms. Johnson-Gant also indicated that plaintiff had come in reference to her daughter revealing that the daughter's father had sexually abused her.
9. Plaintiff was next seen by Ms. Johnson-Gant on October 6, 1992, as a result of a referral from Dr. Van Blaircom, with an admitting diagnosis of dependence on medication and depressive disorder. Plaintiff indicated that she was unsure of why she was there since her major complaint was pain and she admitted that she was dependent on her medications. The notes of this visit further indicate that plaintiff was also beginning to discuss the death of her 16 year old son as a result of an automobile accident involving alcohol the year before and the dynamics of her relationship with her ex-husband and his family. Plaintiff's older son died in 1993, possibly by suicide. Ms. Johnson-Gant diagnosed plaintiff as suffering from "major depression without psychotic features" in late 1993. Following the death of plaintiff's sons, the therapist felt that she could not professionally or ethically drop the plaintiff as her client, even though she was not being fully compensated for her services.
10. Ms. Johnson-Gant felt that plaintiff's inability to work following the compensable injury, and inability to earn (although the plaintiff was receiving compensation throughout this period) made it more difficult for the plaintiff to distance herself from her abusive ex-husband/boyfriend, and that her feelings of helplessness were exacerbated by the loss of her sons and conflicts with her daughter, who shared her home. Plaintiff's injury did not cause or significantly contribute to the development of plaintiff's anxiety and depression. To the degree that stresses and circumstances resulting from the workplace injury contributed to the acceleration or exacerbation of plaintiff's depression, the primary, intervening and superseding cause of her emotional problems was plaintiff's pre-existing and voluntary pattern of associating with her abusive ex-husband/boyfriend, in addition to the deaths of her sons and other social stressors unrelated to her back injury. Plaintiff's treating physician, Dr. McQuiston, observed that the psychological counseling was only marginally helpful during the time she treated the plaintiff, but might become helpful if she received counseling consistently.
11. Dr. E. Bruce Elliston, M.D. evaluated the plaintiff in October of 1987, finding high blood pressure, anxiety and depression, and prescribed medication and referred her to an associate, Dr. Johnson. He referred her to the Blue Ridge Mental Health System in the November, 1987, where she began treating with Dr. Johnson-Gant due to the stresses of her difficult social situation, social stress problems, including significant financial problems, anxiety and depression.
Dr. Elliston's practice continued to see the claimant through August of 1994. He opined that plaintiff's major risk factors for heart attack were hypertension, tobacco use, hyperglycemia or diabetes, personal and family history of heart disease, increased cholesterol, sedentary lifestyle, and "to a lesser degree" though "not a major factor", "the total stress in her life", including stress due to pain and disabilities resulting from the accident.
12. Dr. Todd M. Chapman, M.D., an orthopedist specializing in unresolved surgical back cases, evaluated the plaintiff on October 4, 1993, December 6, 1993 and August 17, 1994. He concluded that plaintiff should be tested for allergic reaction to metal instrumentation placed during prior back surgery, but assuming the metal did not need to be removed, that surgery should be avoided and a program of physical therapy undertaken to reduce her pain. He opined that she had a 25% permanent partial impairment of the back. He did not believe there was a causal relationship between back pain and her heart attack.
13. Defendants ceased paying for medical compensation that ameliorated plaintiff's pain from her compensable back condition following her heart attack. In the Commission's discretion, plaintiff may recover from the defendants, as a portion of the costs, a reasonable attorney fee incurred in the prosecution of this claim upon entry of an award to pay compensation, including medical compensation, following a hearing on review before the Full Commission of the insurer's appeal. In light of the skill and effort required, results achieved, and other factors due consideration per N.C. Gen. § 97-90(c), $3,000.00 is a reasonable attorney fee for the prosecution of this claim.
* * * * * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. Plaintiff is entitled to continuing temporary total disability compensation benefits at the rate of $205.80 per week through the date of the hearing and continuing during her disability until further orders of the Industrial Commission. N.C. Gen. Stat. § 97-29.
2. Plaintiff is entitled to medical compensation reasonably necessary to effect a cure, give relief or shorten the period of plaintiff's disability resulting from plaintiff's compensable injury of October 20, 1988, specifically including those noted in Finding of Fact #12, the bills of Dr. Chapman and Ravenscroft Family Health Clinic to the extent they relate to treatment of plaintiff's back and not her heart condition, medications and a TENS unit as prescribed for her back pain, any future psychological services recommended for the management of back pain, and such other further treatment as determined by her treating physician until further orders of the Commission, when the bills for same have been approved in accordance with the Rules of the Commission. N.C. Gen. §§ 97-2(19); 97-25; 97-26(g); and97-90(a) and (e).
3. Plaintiff is not entitled to compensation for her unrelated depression or heart attack. Plaintiff failed to show that the compensable condition caused or significantly contributed to the development of plaintiff's anxiety and depression, or that any aggravation or acceleration was itself causally related to any incapacity for work resulting from this condition, and failed to rebut the showing that the primary factor in the development and recurrence of the debilitating effects of this malady resulted from her voluntary acts. Wagoner v. Douglas Battery Mfg. Co.,89 N.C. App. 67, 72, 365 S.E.2d 298, cert. denied, 322 N.C. 486,371 S.E.2d 274(1988); Wilkins v. J.P. Stevens Co., 333 N.C. 449,454-55, 426 S.E.2d 675 (1993)N.C. Gen. Stat. § 97-2(6); Cross v.Blue Cross Blue Shield, 104 N.C. App. 284, 287-88,409 S.E.2d 103 (1991).
4. If the parties do not agree upon a treating physician, the Commission may approve a physician to attend, prescribe and assume the care and charge of plaintiff's case. N.C. Gen. Stat. § 97-25.
5. In this case involving primarily medical compensation, to facilitate plaintiff's access to counsel when necessary to vindicate a legitimate right to medical compensation, plaintiff is entitled, in the Commission's discretion, to recover from the defendants, as a portion of the costs, a reasonable attorney fee incurred in the prosecution of this claim upon entry of this award to pay compensation following the insurer's hearing on review before the Full Commission. N.C.G.S. §§ 97-88; Taylor v. J.P.Stevens Co., 307 N.C. 392, 397, 298 S.E.2d 681 (1983); Church v.Baxter Travenol Laboratories, I.C. No. 808478, 26 July 1990, aff'd, 104 N.C. App. 411, 416, 409 S.E.2d 715 (1991).
* * * * * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Plaintiff is entitled to continuing compensation for temporary total disability benefits as provided in the Form 26 Agreement approved November 20, 1991, until further Orders of the Commission.
2. Defendants shall pay for all medical compensation services reasonably necessary to effect a cure, give relief or shorten the period of plaintiff's disability resulting from plaintiff's compensable injury of October 20, 1988, specifically including those noted in Finding of Fact #12 and those rendered by the physicians of the Ravenscroft Family Health Center related to her back injury, and such other further treatment as determined by her treating physician until further orders of the Commission, when the bills for same have been approved in accordance with the Rules of the Commission.
3. Defendants shall pay a reasonable attorney fee of $3,000.00 to plaintiff's counsel of record for services he, and his staff under his supervision, have rendered to plaintiff to obtain payment of medical compensation in addition to that portion of compensation paid pursuant to prior orders. N.C. Gen. Stat. § 97-88.1; I.C. Rule 407(2).
4. Defendants shall pay the costs due this Commission.
 S/ _____________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER
S/ ______________________ DOUGLAS BERGER DEPUTY COMMISSIONER
JRW/jss/md